No. 689

First Circuit

MUTTI v. McCALL

(October 8, 1930. Opinion and Decree.)

Harvey E. Ellis, of Covington and George Piazza, of New Orleans, attorneys for plaintiff, appellee.

E. V. Parham and Edw. Rightor, of New Orleans, and Morgan & Simmons of Covington, attorneys for defendant, appellant.

MOUTON, J. At about 9 o'clock p. m. April 19, 1929, a collision occurred between a Dodge auto and a Chrysler on a concrete bridge across Pontchatalawa creek midway between Covington and Mandeville.

Joseph Luizza was driving the Dodge southward from Covington to Mandeville, and the defendant, McCall, was driving the Chrysler northward towards Covington, and therefore in the opposite direction.

Plaintiff herein, hereafter called Mrs. Alexandre Mutti, was sitting on the front seat of the Dodge with her son-in-law, Joseph Luizza, the driver, and on the rear seat were her two daughters, Misses Anna and Judith, with David Sessler, an attorney from New Orleans, sitting at their extreme left on the east side, the way they were traveling.

Staly and Wushaupt were sitting on the front seat of the Chrysler car which Mr. McCall, defendant, was driving. Mr. Din-kenspiel was sitting on the left of the rear seat, with a lady in the center, sitting between Mr. Dinkenspiel and Mr. Kaiser. Mr. Jeff Mathews, another occupant of the car, was on the floor of the car. He moved from that uncomfortable position and the four managed to occupy the rear seat.

The collision between the two cars took place at about fifteen or twenty feet from the north end of the Pontchatalawa bridge, that is on the Covington side. Mrs. Alexandre Mutti was injured as a result of the accident, so were her two daughters, her son-in-law, Mr. Luizza, and Mr. Sessler. They each brought suit in damages against McCall, who is also sued by Mr. Alexandre Mutti for damages to his Dodge car in which his wife, children, son-in-law, and Mr. Sessler were riding at the time. These suits were consolidated, and by agreement judgment was entered separately in each case.

Messieurs Kaiser and Wushaupt, occupants of the McCall car or Chrysler at the time, having also been injured in the collision, are claiming damages against Mr Joseph Luizza for the injuries they received.

Mrs. Alex. Mutti, her husband, their daughters, Messieurs Sessler and Luizza recovered judgments on their separate demands, but the claims of Kaiser and Wushaupt were rejected.

At the time of the accident Mrs. Alexandre Mutti was running a hotel at Abita Springs from where Mrs. Mutti, her daughters, Messieurs Luizza and Sessler left that evening for an outing to Covington, intending to go by that way to Mandeville, and back to their home. They were out, they say, for a little fresh air, and there is nothing to indicate they had gone pleasure bent or on a joy ride. The presence

of Mrs. Mutti, aged 63, gives assurance that such was far from their purpose. The driver, Mr. Luizza, and the other occupants of the Dodge are positive that during that little trip to Covington and then southward that Mr. Luizza drove at the speed between twenty-five to thirty miles an hour up to the approaches of the bridge when he reduced his speed considerably. Their evidence is that on entering the bridge he was traveling from six to eight miles an hour, and that when the impact occurred his car was barely moving. There is no direct evidence to contradict the testimony of these witnesses on this issue of fact, and no physical facts, or any circumstance or circumstances reflected in this record from which it could be inferred that Mr. Luizza was driving, when he was nearing the bridge, prior thereto, or after his car entered it, at a greater speed than was testified to by himself and the other occupants of his car to which we have hereinabove referred.

The only evidence militating against the statement of these witnesses on this subject is the testimony of Mr. McCall and some of the other occupants of his car. He says, and so testifies the two who sat with him on the front seat, and two on the rear seat, that the Luizza or Dodge car was coming towards the bridge, when the collision took place, at a rapid or excessive rate of speed which they figured to have been about twenty or twenty-five miles an hour. It is always difficult, even in day time, to make an approximately accurate estimate of the speed at which an auto is traveling. Obviously, at night, the difficulties of making such an estimate are increased even to the most careful observer. An estimate made by the occupants of an auto towards which the other car is coming at night, the situation here, has no probative value and usually amounts to a mere guess, as we took occasion to say in Campbell v. Haas, 4 La. App. 435. We find no reason to depart from the conclusion reached by us in that case on this question, and must apply it to the present contest. Applying it, we must hold that the estimate of speed so given to the Dodge car by Mr. McCall and his witnesses cannot be taken as having the effect of effectually contradicting the testimony of Mr. Luizza and the occupants of his car as to the speed he was going prior to and at the time he entered the bridge and when the collision occurred. It must therefore be accepted as an established fact that when the impact occurred the Dodge car was going at about six or eight miles an hour or slower.

Mr. Luizza and the occupants of his car are all certain that he drove on the bridge at the extreme right of the road, the direction he was going. It is shown that he slackened his speed, and there is no reason to believe otherwise because he saw the Chrysler coming towards him from the other end of the bridge. He was familiar with the bridge, which is a little over sixteen feet wide, and it would have been extremely imprudent, if not rash on his part, if he had not, under these circumstances, entered the bridge on the right side as much as he could.

In referring to this much contested point in the case, the district judge said:

"The Court is compelled to rely for its decision on the physical facts as proven and the disinterested witnesses who viewed the scene of the accident before there was any change made in the position of the two automobiles. Mr. Dunn, a witness who lives only a few hundred feet from the bridge was the first one on the scene of the accident, and he describes in detail the relative position of the two cars. According to his testimony the Dodge Sedan was against the concrete curbing on the right

side of the bridge, while the rear end of the Dodge was some two feet from the curbing. The Chrysler automobile was interlocked with the Dodge, one wheel being raised upon the Dodge automobile, having struck it an an angle about midway the hood, showing it was not a head-on collision. This is borne out by the testimony of the witness, Caserta, and the witness, Bullock, who went with the wrecker to remove the automobiles, the Dodge had not been moved when they reached the scene, they stating that the brakes were locked and that it could not be moved until it was lifted up and the brakes put on."

The district judge correctly found that it had not been a head-on collision, as it was clearly shown that the Dodge had been struck by the Chrysler on the left side near the hood. It was shown that the curbing on the right-hand side of the bridge going to Mandeville, the direction the Dodge was traveling, had been scraped for a distance of about twenty feet, and that this scraping was fresh, as was testified to by several witnesses.

The front right tire of the Dodge was also scraped off, which, with the scraping from the curbing of the bridge, indicated very clearly that Luizza had, as he testified, driven his car on the bridge to his extreme right side, where it was found with its brakes locked, and in a state of immobility, immediately after the accident. The Dodge was struck at an angle on the left side, and was practically "smashed up" as one of the witnesses expresses it. The blow was so heavy that the support holding up the engine was broken. It was stated by several witnesses, mechanics and others, that the blow must have been extremely violent, else no such damage would have resulted.

This brings us to the consideration of the speed at which the Chrysler was moving.

Mr. McCall, driver of the Chrysler, frankly states that at the entrance of the bridge in question he was driving approximately between thirty and thirty-five miles an hour; that he "slowed down slightly as he entered the bridge," estimating that he was then going at thirty miles an hour. Although he had seen the Dodge coming towards the bridge, as the road was straight and unobstructed, he however entered that bridge, only a little over sixteen feet wide, at that rate of speed. He says, after entering the bridge while gradually applying his brakes, he was traveling possibly over twenty miles an hour. He says that he entered the bridge on his right-hand side and continued along the curbing on that side until the impact between the two cars. He says, as was also testified to by some of the occupants of his car, that the Dodge was coming on the wrong side of the road, and that Luizza, the driver, as he neared the bridge, turned to his right and passed across the path of the Chrysler, thus causing the collision.

Mr. Sthele who was sitting on the front seat of the Chrysler next to Mr. McCall, says that Mr. Luizza was driving the Dodge on his right side of the road, the proper side, until he got to the bridge, and that he then got in a diagonal position. He testifies that Luizza was going faster than we were, swung to his left side of the road, and was swinging back to his right when the accident occurred. It is shown that there is but a slight incline in that road near the approaches of the bridge, and only about a foot fall from its west to east side, and we cannot conceive of any cause which could have impelled Mr. Luizza to take such a zigzag course when nearing that bridge to make the crossing over the creek.

The variance in the testimony between that of Mr. McCall and Mr. Sthele simply

shows that it was difficult for them to say, from the position in which they were, as to which side of the road the Dodge was advancing towards them.

Mr. Wushaupt, plaintiff against Mr. Luizza, who was also sitting on the front seat of the Chrysler, says that the Dodge was coming on the wrong side of the road. It is true that he agrees with Mr. McCall in that respect, but the fact still remains that to Mr. Sthele the Dodge was coming on the proper side of the road. Two other occupants of the Chrysler, who were on the rear seat with a very tall and stout lady and another member of the party, testified that the Dodge car was coming on the wrong side of the road. Cramped up on this back seat as these two witnesses were, with three men seated in front of them, it is difficult to believe that they could have seen with any degree of certainty on which side of that road the Dodge was moving. In our opinion their testimony has no corroborative strength.

The testimony of Mr. Luizza and of the other occupants of his car convinces us as, no doubt, it convinced the trial judge, that the Dodge approached and got on the bridge at a slow rate of speed, and on its right side, near the curbing, when it was run into by the McCall auto which was going at an excessive rate of speed, considering the situation existing there at that time.

In Corpus Juris, vol. 45, pp. 689-694, we find the following in reference to the question of negligence, viz.:

"There is no such thing as absolute negligence, but negligence is always a relative or comparative term, as is also due, reasonable or ordinary care. Accordingly, the circumstances of the particular case are always to be taken into consideration in determining whether the person sought to be charged with liability for an injury to another or the property of another has exercised the care which the law requires of him or has been guilty of negligence. The amount or degree of diligence or caution which is necessary to constitute due, reasonable, or ordinary care changes with changing conditions, and varies according to the exigencies which require vigilance and attention, so that the same conduct may, under one set of circumstances or in particular surroundings, constitute sufficient care, and under other circumstances or in other surroundings, be negligent or even amount to gross negligence or wantonness. Indeed, so great is the effect of circumstances that the same conduct, under different circumstances or in different situations, may range from the highest degree of care to gross negligence."

Our courts have frequently recognized the rule enunciated in the foregoing excerpt from Corpus Juris. For instance, where the driver of an auto approaches a street crossing where people are constantly crossing, the court in Duffy v. Hickey, 151 La. 274, 91 So. 733, in reviewing other cases, said that:

"It was his duty * * * to have the automobile under full control, so that it could be stopped quickly in event of emergency."

" In a much more recent case, Woodley & Collins v. Schusters' Produce Company, 170 La. 527, 128 So. 469, March 31, 1930, in a case where the driver of an auto was blinded by the headlights of a car approaching from the opposite direction, the court said it was his duty to reduce his speed so as to be ready to stop instantly.

Cases of this character, the court remarked, and we think wisely, depend so much on circumstances "that it is not easy nor safe to lay down a hard and fast rule on the subject." The court also remarked appropriately "that a speed which might be reasonable under ordinary circumstances may be excessive and improper," referring

in that statement to the circumstances which appeared in that case.

The reference we have made to these decisions of the Supreme Court is not intended to convey the idea that the facts therein shown were similar to those presented in the instant case, but as being illustrative of the rule which recognizes that negligence is a relative or comparative term, and must be determined according to the particular facts and circumstances of each case.

In the instant case, no doubt, Mr. McCall had the right to travel on the highway at a speed of forty-five miles an hour under our statutory regulations, but when his car entered that bridge, only sixteen feet and two inches wide, the Dodge car being then about entering the other end of the bridge only sixty feet in length, he should have slackened his speed to a slower rate than thirty miles an hour. After entering it, he says, he was possibly traveling over twenty miles an hour. One car was five and one-half feet wide and the other five feet and nine inches wide, which left a clearance of less than five feet between them. Mr. McCall could have foreseen at once on entering the bridge that he could be blinded by the headlights of the advancing car, then at or near the other end of the bridge, and in such a narrow passage ahead of him the exigencies required that he should have reduced his speed to a slower rate, even accepting his own estimate of the speed at which he says he was moving.

The evidence shows that Mr. McCall and some of the occupants of his car had been attending a convention at Abita Springs to which they were delegates.

Mr. Sthele, who was on the front seat with Mr. McCall, says the day's business had been concluded, and that they were pleasure bent. From our reading of the record we have no hesitancy in believing that this statement of Mr. Sthele was not exaggerated. They were simply having a good time, and, so bent, Mr. McCall was driving too fast and drove at an excessive rate into the Dodge car, then going at a slow rate of speed, and in which the Mutti family had gone out for the pleasures of an evening drive. Had he been driving at the rate Mr. Luizza was moving or even faster, but within a reasonable limit, under the circumstances, there would have been no collision. He was therefore at fault and was properly held liable in damages to the plaintiffs in these cases, and consequently the suits of Messieurs Kaiser and Wushaupt against Mr. Luizza were correctly dismissed.

## AMOUNT OF DAMAGES

The following refers to the injuries which Mrs. Alexandre Mutti received, and the sufferings she must have undergone as a result of the collision.

Dr. Buquor, the first physician who gave medical attention after the accident, found her soaked in blood, likewise was the auto in which she was carried to Covington. Her scalp was cut from temple to temple and when her hair was lifted, the scalp came with it showing a naked skull. Branches of the temporal artery had been severed, spurting blood with the pulsations of the heart. Stitches were necessary to close the wounds, and had to be made without the aid of anesthetics on account of the weakened condition of Mrs. Mutti from which she must necessarily have suffered considerably, if not intense pain. She also had a deep cut on the right side of her face, about one-quarter inch in depth, and six inches long. These cuts left scars, which, from all indications, will be permanent. She was taken to Hotel Dieu for attention. The morning after her arrival

she was placed on the operating table, her wounds sutured without the use of anesthetic, because of her condition the physicians fearing possibility of death if it had been administered. She was approximately 23 days at Hotel Dieu and was still suffering with nervousness when the case was tried, several months after the accident.

The court allowed her $3,000 damages, but gave her judgment for an additional sum of $1,009.40 for doctors' bills and 'medicine, the latter amount being in error as it was recoverable by her husband, Mr. Alexandre Mutti, the head of the community.

The amount of damages, we do not find, is in the least excessive, and will not be increased or decreased. The allowance of $1,009.40 above mentioned really $885, with explanation hereinafter made, will be deducted from the judgment of Mrs. Mutti, and given to her husband.

Miss Anna Mutti was severely injured. She had seven contusions and bruises all over her body and on the right side of her chest; her right hip, she testifies, was "bruised black as my dress from my hip to my ankle," and from which she suffered during six to eight weeks. Her upper arm and shoulder were also bruised. She suffered a broken bone in the kneecap and a fracture of one of the bones in her right leg, walked with a cane several months after the accident, her fractured leg being still sensitive at the time of the trial. She is naturally of a nervous temperament, her nervousness having increased from the effect of her injuries. The district judge allowed her $1,677.45, which will be reduced to $1,200, and, as thus amended the judgment will be affirmed.

The injuries to Miss Judith Mutti, Mr. Joseph Luizza, and Mr. David Sessler were not so severe.

The judgment to Miss Judith Mutti will be reduced from $400 to $300; Joseph Luizza from $350 to $250; and David Sessler from $265 to $200; and as thus amended, affirmed.

In a supplemental petition Mr. Alexandre Mutti claimed $980 for doctors' bills and medicine for his wife. Counsel for defendant claims that $95 is an item incurred by Mrs. Bertha Mutti Luizza in taking her mother to New Orleans and attending to her while there from April 20 to May 13, 1929. Nurses and medical expenses are fully included under the other items for the necessary attention to Mrs. Mutti, and that item will therefore be deducted from the $980, leaving a balance of $885, which will be added to the amount for damage to the Dodge sedan for which the court allowed Mr. Alexandre Mutti $1,252.

This latter amount will be reduced to $1,000.

In the cases of William F. Wushaupt and Herbert W. Kaiser v. Joseph Luizza et al., the judgments rejecting their respective demands will be affirmed, and a proper decree, for the reasons hereinabove assigned, will be entered in each case as was done below.

It is therefore ordered, adjudged, and decreed that in this case of Mrs. Victoria Grisoli Mutti v. G. McCall, that plaintiff have judgment against defendant in damages in the sum of $3,000, with legal interest from judicial demand as decreed below; that the judgment be amended by striking out the item therein recognized for doctors' bills and for medicine which will be transferred to the claim of plaintiff's husband; and, as thus amended, the judgment appealed from herein be, and is hereby, affirmed, with cost.