## STATE v. VERLIN BLANKENSHIP.

(Filed 15 December, 1948.)

**1. Automobiles § 30a—**

A person is intoxicated within the purview of G.S. 20-138 if he has drunk a sufficient quantity of intoxicating beverage to impair to an appreciable extent the normal control of his bodily or mental faculties.

**2. Criminal Law § 52a (1)—**

Upon motion to nonsuit, the evidence must be taken in the light most favorable to the State, giving it the benefit of every reasonable inference deducible therefrom.

**3. Automobiles § 30d—**

Defendant had an accident while driving his car on the highway. Testimony of witnesses who saw and observed defendant shortly before and shortly after the accident that they smelled alcohol on his breath, and that at that time defendant was intoxicated, *is held* sufficient to be submitted to the jury in a prosecution for driving a motor vehicle on the highways while under the influence of intoxicants. G.S. 20-138.

**4. Automobiles § 29b—**

Evidence that defendant, while intoxicated, was driving his car at a speed of from 55 to 60 miles per hour from one side of the road to the other, and had passed a truck after the truck had passed his car, that he had been requested several times by a passenger in his car to slow down, and that he lost control of the car, which twice ran off the road onto the shoulder and turned over leaving scuffed marks on the highway for a distance of 267 feet and throwing one of the passengers from the car to his fatal injury, *is held* sufficient to be submitted to the jury on a charge of reckless driving. G.S. 20-140.

**5. Same: Automobiles § 18h (1)—**

Physical facts at the scene may speak louder than the testimony of witnesses.

**6. Automobiles § 28a—**

Culpable negligence is the intentional, willful or wanton violation of an ordinance for the protection of human life which proximately results in injury or death, or the inadvertent violation of such statute or ordinance under circumstances amounting to a thoughtless disregard of consequences or a heedless indifference to the safety of others, proximately resulting in injury or death.

**7. Automobiles § 28e—**

Evidence that defendant was driving on the public highways of the State while under the influence of intoxicating liquor in violation of G.S. 20-138, and was driving recklessly in violation of G.S. 20-140, which proximately caused the death of a passenger in his car, is sufficient to be submitted to the jury in a prosecution for manslaughter.

APPEAL by defendant from *Clement, J.,* at August Term, 1948, of WILKES.

Criminal prosecution upon three separate bills of indictment charging defendant with crimes of manslaughter in "No. 150 W. D."; operating a motor vehicle upon the public highway while under influence of intoxicants, etc., in "No. 151 W. D."; and reckless driving, etc., in "No. 152 W. D.," charges in eight counts, consolidated for trial, and tried with criminal prosecutions upon two separate bills of indictment charging Fred Church with crimes of (1) manslaughter, and (2) operating a motor vehicle while under the influence of intoxicants. Fred Church was acquitted of manslaughter, but was convicted on the second bill, from which he did not appeal.

Defendant pleaded not guilty.

The State offered, upon the trial in Superior Court, evidence tending to show the following facts:

The scene of the alleged offenses, with which defendant stands charged, and of which he is convicted, is located on the North Wilkesboro-Boone highway, U. S. 421, about twenty miles west of North Wilkesboro. At the time of the wreck in question about 9 o'clock on the night of 22 December, 1946, the automobile operated by defendant was traveling west on said highway. A State Highway patrolman, describing the scene, testified, "There is a curve just this side from where I found the car, east of the scene of the accident, approximately 100 yards . . . Back of that curve there is another curve, the road is kind of crooked, where this accident occurred is kind of a bend in the road . . . It was not snowing, but right this side of the accident it was wind snowing, blowing snow across the road . . . I do know that where it happened was between two curves. It was practically straight where the wreck occurred."

A narrative of events previous to the time of the wreck as given on direct examination of the State's witness, Ruth Mast, who lives at Stoney Point in Wilkes County, North Carolina, about twelve miles west of the point of said wreck, as we calculate from the evidence, in summary, is as follows: About 6 o'clock p.m., on 22 December, 1946, Logan Church, accompanied by Fred Church and Gurney Greene, riding in a motor vehicle, a pick-up driven by Logan, came to her home and "picked" her up. They carried Gurney to his home at Congo, located on a dirt road about two miles off highway 421, and about 15 miles from her home. They then went to a little store across from Gurney Greene's. They stayed there around 45 minutes or an hour. Verlin Blankenship, the defendant, traveling in a '40 Ford, came about 8 o'clock. After awhile they started home, Logan, Fred and Ruth, in the pick-up, Logan driving, —and Verlin in front in his car, going back toward the highway. Two stops were made on the dirt road. At the second stop, apparently near

to the highway, Logan and Ruth got in the car with Verlin, he driving. They left first. Fred got in the pick-up, and followed. Up the road about a mile Fred passed Verlin. "Then Verlin passed Fred." When Fred passed, Verlin was driving the car "about 50 miles an hour." When Verlin passed Fred, the car "was going about 55 to 60 miles an hour. He was driving pretty fast at that time . . . on one side of the road, then on the other . . . going backward and forward." Ruth asked him "three or four times to slow down." They had come about three miles when the wreck occurred. Logan asked Ruth to light a cigarette for him. She says, "When I went to give him the cigarette, I looked toward him. When I looked back in the road the car was wrecking . . . I mean leaving the road. Logan and I were thrown out of the car." Logan's body came to rest on the hard surface of the highway. He died. She landed in the ditch, and was knocked unconscious.

Ruth Mast further testified: "There wasn't any one in front of our car on the road at the time the car left the road. He met a pick-up at the curve, a pick-up or car . . . It had just passed when the car . . . left the road." Then, on cross-examination, she continued in part: "Fred passed us . . . after we got on the hard surface. Then we passed Fred. We had just met a car. He slowed down before the wreck occurred. He was driving all right as far as I could see immediately before it happened . . . We met a car at the curve just before we started wrecking. The lights did not blind all of us, not that I could tell. I was lighting a cigarette, I didn't have my face toward the road . . . Just before the wreck . . . Verlin was driving the car at a reasonable rate of speed . . . driving all right on the road."

The evidence as to physical facts in relation to the wreck follows: Ruth Mast testified that when she regained consciousness "the car was sitting over from me in the road . . . on its wheels . . . The windshield was broken, the front end, the glass and door on my side was broken, I think."

And the State Highway patrolman testified: "Just before getting to the body it showed where the car had been in the ditch and crossed out across the road and rolled and turned up on the four wheels. There were scuff marks from the wheels approximately 180 feet before getting to the point where the body of Logan Church was lying, and about 87 feet from the body to the car . . . Beginning at a point 267 feet east of the place where the car was found in the road . . . scuff marks on the road led into the side ditch, then back into . . . and to the middle of the road . . . The body was 87 feet east of . . . the car." This same witness, being recalled, gave this further summary: "The skid marks started about the center line of the highway, continued on the left-hand side of the road going west and went over to the right-hand side of the road and crossed

the shoulder, then continued on the right-hand side of the road across the shoulder, started at the center of the highway, went to the right and across the shoulder into the side ditch and up on the edge of the bank,— there was a bank on the right-hand side of the road some three or four feet high, and left the bank and crossed back across the shoulder and on to the highway and turned up on its wheels, the car turned up on its wheels . . . The car, from . . . where it left the bank . . . was 87 feet. It was right at the foot of the mountain."

And the evidence as to defendant being under the influence of intoxicants follows: Ruth Mast testified: "I first saw Verlin Blankenship over at the store about 8 o'clock. I could smell alcohol on him . . . as to whether he was under the influence of intoxicating liquor at the time . . . I think he was . . . I saw him with some liquor. He had some in a half pint bottle in his pocket . . . He came in and took it out of his pocket and took a drink. That was about an hour before the wreck . . . That is all I saw him take . . . I think he was under the influence of intoxicating liquor at the time he drove that car from the store over to where we exchanged. I could smell it on him at that time. When we made the exchange . . . it was about a half hour from then until we had the wreck . . . During that time . . . after the wreck . . . at the time of the wreck, I think he was under the influence of intoxicating liquor . . . I could smell alcohol and whiskey on him, that is my opinion."

Another witness, J. C. Gallimore, testified: "The defendant Blankenship was intoxicated pretty bad, to tell the truth of it, at that time. He was intoxicated when he came around the car . . . I would say it was about 9 :15 at night when I came upon the scene of the wreck . . ."

A funeral director testified: "I saw the defendant Verlin Blankenship, there that night. I did observe his breath. He smelled of whiskey . . . I think he was under the influence of intoxicating liquor."

And the highway patrolman testified: "It was somewhere around 11 or 11 :30 when I got there . . . at the scene . . . I saw . . . Verlin Blankenship there that night . . . I smelled alcohol on his breath. I did have an opportunity to observe him there, over a period of approximately an hour . . . It is my opinion that he was under the influence . . . I found one part of a pint of whiskey in the car . . . in the front seat on the floor board . . . . white, non-tax-paid liquor . . . just a drink or two, a small amount . . ."

Verdicts: Guilty of manslaughter, guilty of operating a motor vehicle while under the influence of intoxicants and guilty of reckless driving.

Judgments: No. 9. Confinement in common jail for a term of 3 years, assigned to work on roads under supervision of State Highway and Public Works Commission. No. 10. Confinement in common jail for a term of 4 months, etc., this sentence to run concurrently with that in No. 9.

No. 11. Confinement in common jail for a term of 4 months, etc. This sentence to run concurrently with that in No. 9.

(Here let it be noted that in response to a writ of *certiorari* issued by this Court, *ex mero motu,* the Clerk of Superior Court of Wilkes County, North Carolina, certifies under seal of said court, that it appears from the court records that these cases were continued from term to term, and given new numbers at each succeeding term, and that accordingly at the trial term the bills of indictment originally numbered 150, 151 and 152, respectively, were numbered 9, 10 and 11, respectively, as indicated in the judgments pronounced.)

Defendant appeals to Supreme Court from judgments rendered, and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Trivette, Holshouser & Mitchell for defendant, appellant.*

WINBORNE, J. The question presented by defendant, and most earnestly argued, as involved on this appeal challenges the rulings of the trial court in declining to sustain his motions for judgment as of nonsuit on each of the charges preferred against him. After a careful consideration of the evidence in the case in the light of pertinent statutes, G.S. 20-138, G.S. 20-179, G.S. 20-140, and G.S. 20-141, and decisions of this Court, we are of opinion and hold that the evidence is sufficient to take the case to the jury, and to support a verdict of guilty on each of the offenses of which defendant stands convicted.

Now as to the offenses charged against defendant:

As to the offense of driving while under influence of intoxicating liquor: The statute, G.S. 20-138, provides that "it shall be unlawful and punishable, as provided in Section 20-179, for . . . any person who is under the influence of intoxicating liquor . . . to drive any vehicle upon the highways within this State." And G.S. 20-179, as rewritten by 1947 Session Laws of North Carolina, Chapter 1067, Section 18, declares that every person who is convicted of violation of Section 20-138, relating to . . . driving while under the influence of intoxicating liquor . . . shall, for the first offense, be punished by a fine of not less than one hundred dollars ($100.00), or imprisonment for not less than thirty (30) days, or by both such fine and imprisonment, in the discretion of the court . . . etc."

And in *S. v. Carroll,* 226 N. C. 237, 37 S. E. 688, in opinion by *Denny, J.,* this Court held that "before the State is entitled to a conviction under G.S. 20-138 . . . it must be shown beyond a reasonable doubt that the defendant was driving a motor vehicle on a public highway of this State,

while under the influence of intoxicating liquor or narcotic drugs." And that "A person is under the influence of intoxicating liquor or narcotic drugs, within the meaning and intent of the statute, when he has drunk a sufficient quantity of intoxicating beverage or taken a sufficient amount of narcotic drugs, to cause him to lose the normal control of his bodily or mental faculties, or both, to such an extent that there is an appreciable impairment of either or both of these faculties."

Applying the provisions of the statute, G.S. 20-138, as interpreted in *S. v. Carroll, supra,* to the evidence in the present case taken in the light most favorable to the State, and giving to the State the benefit of every reasonable inference deducible from the evidence, as we must do in considering a motion for judgment as of nonsuit in a criminal prosecution, *S. v. Gentry,* 228 N. C. 643, 46 S. E. (2) 863, and *S. v. Davenport,* 227 N. C. 475, 42 S. E. (2) 686, and cases cited, we are of opinion that the evidence is sufficient to support a finding by the jury beyond a reasonable doubt that defendant did on the occasion in question operate his car, a motor vehicle, upon a public highway of this State, while under the influence of intoxicating liquor as defined in *S. v. Carroll, supra.*

As to the charge of reckless driving, etc.: The statute, G.S. 20-140, provides that "any person who drives any vehicle upon a highway carelessly and heedlessly in willful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving, and upon conviction shall be punished as provided in Sec. 20-180."

And G.S. 20-180, as rewritten by the 1947 Session Laws of North Carolina, Chapter 1067, Section 19, declares that "every person convicted of violating Section 20-140 or Section 20-141 shall be guilty of a misdemeanor." Moreover, the statute, G.S. 20-141, pertaining to speed restrictions, provides that "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing."

Applying the language of the statutes G.S. 20-140 and G.S. 20-141 to the evidence in the present prosecution, taken in the light most favorable to the State, and giving to the State the benefit of every reasonable inference deducible therefrom, as we must do in considering a motion for judgment as of nonsuit in a criminal prosecution, *S. v. Gentry, supra,* and *S. v. Davenport, supra,* it would seem that the evidence is sufficient to justify and to support a finding by the jury beyond a reasonable doubt that at the time of the wreck in question defendant was driving recklessly within the meaning of the statute, G.S. 20-140. See *S. v. Steelman,* 228 N. C. 634, 46 S. E. (2) 845.

In this connection, attention may be directed in particular to the testimony tending to show (1) that defendant had been driving his car at speed of fifty-five to sixty miles per hour, from one side of the road to the other, and passing the pick-up after it had passed his car; (2) that he had been requested three or four times, by a passenger in his car, to slow down; (3) that at the time he was under the influence of intoxicating liquor; and (4) that the car had wrecked in the manner indicated by the marks on the highway, and was damaged as indicated. From this testimony, if believed, it may be reasonably inferred that at the time of the wreck the car was being operated with terrific momentum and wholly out of control. This is so, even though the witness Ruth Mast testified that defendant had slowed down and was driving at a reasonable rate of speed at the time of the wreck. Some physical facts speak louder than the testimony of witnesses. *Powers v. Sternberg,* 213 N. C. 41, 195 S. E. 88, and cases cited.

As to the charge of involuntary manslaughter: This charge is based upon culpable negligence as distinguished from actionable negligence. The distinction between the two is clearly pointed out by Stacy, C. J., in *S. v. Cope,* 204 N. C. 28, 167 S. E. 456. In the *Cope case* it is stated that culpable negligence in the law of crimes is something more than actionable negligence in the law of torts; that it is such recklessness or carelessness proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others; that it may be in an intentional, willful or wanton violation of a statute or ordinance for the protection of human life or limb which proximately results in injury or death; or that it may be in an inadvertent violation of a prohibitory statute or ordinance accompanied by recklessness of probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, amounting altogether to a thoughtless disregard of consequences or a heedless indifference to the safety of others, if injury or death proximately ensue. See *S. v. Miller,* 220 N. C. 660, 18 S. E. (2) 143, where the evidence there was held to be insufficient to establish culpable negligence.

However, applying this principle to the evidence relating to the violations by defendant of the statutes (1) against operating a motor vehicle upon public highways of this State under the influence of intoxicating liquor, G.S. 20-138, and (2) against the driving of any vehicle upon a highway recklessly, etc., G.S. 20-140, of which the jury has convicted defendant, the only question remaining is whether the violation of either of these statutes proximately caused the death of Logan Church. The evidence in this respect does not seem to admit of debate. It was purely a question of fact for the jury. And the jury has spoken. So be it!

The cases of *S. v. Miller, supra,* and *S. v. Lowery,* 223 N. C. 598, 27 S. E. (2) 638, upon which defendant relies in his brief, are distinguishable from the present case in factual situations.

Other exceptions appearing in the record and debated in brief of defendant filed in this Court have been carefully considered, and in the matters to which they relate, we fail to find reversible error.

No error.