Robert Birnbaum, Appellee, v. Allen E. Kirchner, Appellant.

Gen. No. 9,618.

Opinion filed February 28, 1949. Rehearing denied April 16, 1949. Released for publication April 18, 1949.

EPLER C. MILLS, of Virginia, and GIFFIN, WINNING, LINDNER, NEWKIRK & JONES, of Springfield, for appellant.

EDWARD J. FLYNN and HARRY G. STORY, both of Jacksonville, and GLEN C. COLBURN, of Virginia, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

A jury in the circuit court of Cass county awarded the plaintiff, Robert Birnbaum, $6,000 for damages he sustained when he was struck by an automobile operated by the defendant, Allen E. Kirchner, on the evening of November 2, 1946. Motion for new trial was denied and judgment entered on the verdict of the jury.

On the night of the accident the plaintiff, Robert Birnbaum, with Dr. Walter Frank, left Jacksonville, Illinois, for the purpose of going to Dr. Frank's cabin near Chandlerville, Illinois, to spend the night and a portion of the following day, at the invitation of Dr. Frank. On the way they stopped at the home of plaintiff's brother, Frank Birnbaum, who lives on Illinois State Highway No. 78 at a point about one-fourth of a mile north of its intersection with Illinois State Highway No. 125 in the City of Virginia. It was a dark and rainy night.

Shortly before 8 o'clock that evening the trip was continued, and Dr. Frank, the plaintiff, and Frank Birnbaum, got into Dr. Frank's car and Dr. Frank proceeded to back out of the driveway in a westerly direction, onto the highway. He backed completely across the paved portion, onto the shoulder and with the left rear wheel down in the ditch. The shoulder was soft and he was unable to get the car out of the ditch under its own power.

The plaintiff walked to a nearby filling station and attempted to get aid, but was unsuccessful. He then called the Birnbaum Grocery Store and asked them to come out and help pull the car out of the ditch. Martin Freel and Jack Carson, employees of the Birnbaum Grocery Store, came in a panel delivery truck belonging to the store. It does not appear that the plaintiff had any interest in that grocery business.

At this point the highway runs generally north and south, curving gradually to the right a short distance south of the point of the accident. The delivery truck was placed on the west or southbound traffic lane, headed to the north, and with its headlights burning. A chain was attached from the truck to the Frank automobile and an unsuccessful effort was made to pull it out. The truck was then backed slightly and the chain was being shortened. While these efforts were being made, the plaintiff took Dr. Frank's electric lantern and was flagging traffic past the scene of the accident. He flagged several cars through coming from the south and one car which was coming from the north. He observed a transport truck coming from the south and at the same time noticed another car coming from the north. He went around to the front of the panel truck and standing upon the left, or west, side of the highway in the southbound traffic lane, about 15 to 20 feet in front of the headlights of the panel truck, he began waving his lantern from side to side. The transport truck from the south continued on past, and then the plaintiff observed that the car from the north did not appear to slow down. Thereupon he started to run to the west, off of the highway and onto the shoulder of the road, but the southbound car also turned off to the west shoulder and struck him, thereby inflicting the injuries complained of. His injuries consisted of a fracture of the right clavicle with a wide separation, and the fracture of seven ribs in the back and six ribs in the front. Some injury was

sustained to his kidney and pleura developed in the right lung. He remained in the hospital from November 2 until December 30, and was unable to return to work until April 1, 1947. Thereafter he worked half time for four weeks and went to work full time on May 1, 1947. He has some limitation in the motion of the right shoulder and has incurred substantial doctor and hospital bills.

The defendant maintains that the plaintiff, Dr. Frank, Martin Freel and Jack Carson were all engaged in a joint enterprise in attempting to extricate Dr. Frank's car from the ditch and had joint control over the means and methods used. Hence, it is contended that the negligence, if any, of the driver of the truck in placing it in the position where it was and permitting it to remain there up to the time of the accident should be imputed to the plaintiff and bar his recovery.

The only authority cited in support of that contention by the defendant is *Grubb v. Illinois Terminal Co.,* 366 Ill. 330. In the *Grubb* case three sisters were riding in a car owned by one of them and being driven by another. They were going to Springfield, and the sisters joined in payment for the gasoline and other expenses of the trip. They were going to Springfield to purchase material for their home, the cost of which would be borne equally by the three, and under these conditions the court held that they were engaged in a joint enterprise. In the present case Dr. Frank had invited the plaintiff to spend the night and a part of the next day at his cottage. There was no evidence of any agreement to share the cost of the trip. The purpose was strictly recreation—no business was involved. The effort to release Dr. Frank's car that had become mired in the mud off the pavement was incidental to the trip. The plaintiff had undertaken one phase of that task, namely to warn oncoming traffic of the danger. To hold that one who does that under

such circumstances must be held liable for the negligence of any other person who likewise undertakes to aid the disabled vehicle, would certainly discourage such courtesies of the road, and tend to lengthen the time that the traffic hazard created by the presence of that disabled vehicle would exist.

The *Grubb* case, *supra*, is not authority for the fact that this plaintiff and his friends were engaged in a joint enterprise as a matter of law, but along with *Schachtrup v. Hensel*, 295 Ill. App. 303, and *Johnson v. Turner*, 319 Ill. App. 265, well established the contrary.

In *Johnson v. Turner*, *supra*, plaintiff was a passenger in the rear seat of an automobile owned and operated by his employer on a trip home from repairing a farm building. The suit was against the driver of another car with which they had collided. As a defense the defendant contended that the negligence of Johnson's employer should be attributed to Johnson and bar his recovery. The court said, on page 280, that the transaction was not a joint enterprise, but that of employer and employee.

The court held the following facts did not amount to a joint enterprise in *Schachtrup v. Hensel*, *supra*. The plaintiff sued for damages he received while a passenger in a car owned and operated by Potter. The purpose of the trip was to appraise farm land. The plaintiff had no interest in the automobile, the expenses of the trip or the farm, but was going for the definite purpose at the request of Potter.

The court said:

"It is our conclusion that the evidence falls far short of showing that the plaintiff and defendant's intestate were engaged in a joint enterprise."

To be a joint enterprise there must be a community of interest in the purposes of the undertaking and some right to direct and govern the movements and conduct of each other in connection therewith.

This situation is not found where a host invites a person to be his guest for the purpose of entertainment, and they travel in the automobile of the host.

In the instant case Dr. Frank, as the owner of the car, possessed complete control over his own automobile. He had the right to determine the method to be used in releasing it from the mud, or he could have elected to abandon it until morning, irrespective of the wishes of the plaintiff.

Since this is not a joint enterprise, it is not necessary to discuss the contention of the plaintiff that the defendant has in this court, departed from the theory he pursued in the trial court.

The accident occurred in the nighttime, during a rain. Over the objections of the defendant five witnesses for the plaintiff testified that the defendant was approaching the scene of the accident at speeds varying from 50 to 65 miles per hour, and that the defendant did not slow down.

The defendant contends that to permit such testimony was error without requiring a proper foundation to insure some semblance of accuracy, and emphasizes the fact that the witnesses could see only the lights of the automobile and not the vehicle itself as it approached them head-on. Defendant points out that at night the opportunity to watch the moving vehicle as it passes trees, posts and other landmarks that aid in estimating speed is destroyed and the accuracy with which a person might estimate speed in the daytime of a moving object is decreased at nightfall, when only the lights are visible. The briefs of both parties suggest that the courts of review of this State have never passed on this precise question, namely the right to testify to the speed of an automobile coming toward the witness in the nighttime when only the lights are visible.

The defendant mentions the case of *Mutti v. McCall*, 14 La. App. 504, 130 So. 229, in support of its contention. While this case minimizes the value of the

testimony of an occupant of a car estimating the speed of a car coming in the opposite direction, it does not hold that to admit such testimony is error.

In *Fuhry v. Chicago City Ry. Co.*, 239 Ill. 548, the witness testified that he saw the car about one instant before it struck—that he happened to turn around, and that it was almost on top of him. The court held that it was proper to permit him to testify to the speed, as the objection went only to the weight of the testimony and not to its competency.

The court said in *People v. Lloyd*, 178 Ill. App. 66:

"It frequently happens that in the absence of better evidence, opinions of witnesses are admissible, and in many cases such evidence is the only method of bringing before a court or jury the fact required to be proved. In such cases non-expert witnesses may state their opinions as to matters of fact coming within their observation and which cannot be otherwise described, such as the speed of trains, apparent age, physical appearance, intoxication, excitement, condition of health, and the like, and such opinions are received as evidence of the facts stated."

The *Lloyd* case, *supra,* cites the following authorities: *Chicago, B. & Q. R. Co. v. Gunderson,* 174 Ill. 495; *City of Chicago v. McNally,* 227 Ill. 14; *Greinke v. Chicago City Ry. Co.,* 234 Ill. 564; *Illinois Cent. R. Co. v. Prickett,* 210 Ill. 140.

King and Pillinger in "Opinion Evidence in Illinois," say on page 35:

"Another opinion which is admitted as an exception to the fact-opinion rule is an opinion of ordinary witnesses as to the speed of vehicles. This is admitted of necessity since there is no other way to get the matter before the jury.

"In an early case there is an indication that a witness must be duly qualified to state the speed of a

vehicle, but the great weight of authority is that any-one (regardless of qualification) may give such an opinion.''

Counsel for defendant developed in the testimony the adverse conditions under which the witnesses were called upon to estimate the speed of defendant's automobile, and undoubtedly argued the point to the jury. This is all that could be done. The facts in this case do not make the testimony improper, but only go to the weight of the evidence.

Certainly the reasons for the admissibility of opinion evidence as to the speed apply *a fortiori* to the case now before the court. If this testimony were to have been excluded merely because it was based on opinions or estimates formed at night there is no other evidence appearing in the record of unquestioned validity as to defendant's speed. The jury might then have been forced to resort to inference from other relevant, but remote, facts or even to speculation, if the question of speed were not to be wholly ignored. The testimony was thus necessary to the jury's determination of the speed of the defendant's car.

Nor is the accuracy of such testimony open to objection more serious than involved in any other estimate of speed by a lay witness. It is well settled that any person of ordinary ability and intelligence having the means or opportunity to observe is competent to testify to the rate of speed of a moving object. *People v. Lloyd, supra;* see also 156 A. L. R. 382, 384 and cases cited. Speed is a matter of relative motion gauged by comparison with other objects.

''Speed is a scalar quantity equal to the magnitude of velocity and is always relative to a stated frame of reference.'' Websters New International Dictionary, 2417.

Certainly estimates of speed made with a frame of reference composed of fixed objects are ad-

missible, as are estimates based on comparisons with moving objects in a frame of reference (*Williams v. Kaplan,* 242 Ill. App. 166), even though the opportunity to observe be momentary and the line of the approach parallel to the witnesses' course. *Fuhry v. Chicago City Ry. Co., supra.*

Here witnesses and the background against which the oncoming car approached were both stationary. The witnesses had sufficient if not ample time to estimate the speed of defendant's car as it approached them. This court cannot say that testimony concerning a car approaching a witness at night under these circumstances calls for a rule different from that generally applied to admit estimates of speed by non-expert witnesses in the daytime.

The problem, that of estimating relative motion, is the same in both cases. The sense witnesses use, sight, is identical. Objective bases comprise a frame of reference which permit an estimate to be made; as the car approaches the circumference of the headlights increases; the distance between lights becomes greater; and the intensity of the beams cast by the lights waxes. It is in the rate at which these changes occur that the opportunity to make an estimate of speed exists. Motorists and pedestrians abroad at night estimate speed by such references as a commonplace matter. It may be that such an estimate calls for intelligent discrimination and lengthy experience to obtain absolute accuracy. Errors may be made. But such factors affect the weight and not the admissibility of such evidence and are properly matters for the jury to assay in considering the value which testimony merits.

Defendant urged that the court erred in improperly admitting photographs in evidence and without limiting their use. The photographs were taken almost one year after the accident, during the daytime, when it was not raining. The photographs were identified

by the photographer and other witnesses, including the defendant and the county surveyor as pictures portraying the scene at the time of the accident.

In the light of that identification and the further fact that counsel for plaintiff offered the photographs for the purpose of showing the location of the accident only, we do not feel that the trial judge was guilty of any abuse of discretion in deciding that these pictures would be of some help to the jury. *Burke v. Molloy*, 294 Ill. App. 442; *Blachek v. City Ice & Fuel Co.*, 311 Ill. App. 1.

The trial judge was present in court and heard and saw the witnesses, and in overruling the motion for a new trial did not believe the verdict to be against the weight of the evidence or excessive. From a careful scrutiny of the record in this case we cannot say that his action was error.

The judgment of the circuit court is affirmed.

*Affirmed.*