## STATE v. ALBERT TRACY BECKER.

(Filed 14 January, 1955.)

**1. Automobiles § 18g (4)—**

    It is competent for a person of ordinary intelligence and experience to express an opinion from his observation of a car as to its speed, and while such witness's opportunity to judge generally relates to the weight of his testimony rather than to its admissibility, where the witness has no reasonable opportunity to judge the speed of the car, his testimony in regard thereto is without probative force.

**2. Same—**

The witness testified that she first saw defendant's car when it was only 15 feet away, and that she then looked toward her husband, who was in front of her, and saw him shove her son out of the pathway of the car before it struck her and her daughters. Other evidence established that defendant's car came to a complete stop within 8 or 10 feet after the impact. *Held:* Under the circumstances and in the light of the physical facts the witness's testimony that the car was traveling at a speed of 55 miles per hour when she saw it, is without probative value.

**3. Automobiles § 18g (5)—**

The physical facts at the scene of the accident may speak louder than the testimony of the witness.

**4. Automobiles § 28c—Evidence held insufficient to be submitted to the jury in this prosecution for manslaughter.**

The evidence tended to show that the fatal accident occurred in a residential area near a stadium, that cars were parked along the street, that defendant's car left tire marks visible for a distance of fifty-two feet, and that it skidded some distance before the impact, but without testimony as to the length of the skid marks, and without evidence of probative value contradicting defendant's testimony that he was proceeding in his proper traffic lane at a legal rate of speed, that he slowed as he entered the intersection and put on his brakes as quickly as he could when he saw some pedestrians crossing the street ahead of him, but was unable to stop before striking some of the pedestrians, fatally injuring one of them. *Held:* Conceding that the evidence is sufficient to support the view that defendant was not keeping a proper lookout under the conditions as they existed at the time, the evidence is not sufficient to show culpable negligence on his part, and his motion to nonsuit in this prosecution for manslaughter should have been allowed.

**5. Negligence § 23—**

Culpable negligence in the law of crimes is more than actionable negligence in the law of torts, and culpable negligence is such recklessness or carelessness, resulting in injury or death. as imports a thoughtless disregard of consequence or a heedless indifference to the rights and safety of others.

PARKER, J., dissents.

APPEAL by defendant from *Fountain, Special Judge,* February Term, 1954, of GUILFORD (Greensboro Division).

Criminal action tried upon a bill of indictment charging the defendant with manslaughter.

The evidence for the State discloses that on the evening of 8 August, 1953, about eight o'clock, Samuel W. Phillips, his wife, two daughters and a son, and Weldon Bolen were on their way to a ball game which was in progress at World War Memorial Stadium in the City of Greensboro. Mr. Phillips lives near Guilford College and had driven Mr. Bolen's car. He parked the car on Bagley Street some two and a half blocks west of

the intersection of Bagley Street and Summit Avenue. They proceeded from there on foot toward the Stadium which is located about two blocks east of the intersection of Bagley Street and Summit Avenue. Bagley Street west of the intersection with Summit Avenue is thirty feet wide, east of the intersection it is eighty feet wide. The additional width of this street is used as parking space. Summit Avenue is sixty feet wide. It has four lanes for traffic in addition to parking space on both sides of the street. Mr. Phillips and his family undertook to cross Summit Avenue from the northwestern intersection of Bagley Street with the avenue to the northeastern intersection of these streets. By reason of the greater width of Bagley Street east of the avenue they had to proceed at an angle of about forty-five degrees across Summit Avenue in a northeasterly direction. Mr. Phillips took his small son by the hand and started across the street and as he and his son, who was seven years of age, reached a point beyond the center of the street, he first noticed the defendant's car when he heard the screaming of the tires. He gave his son a shove and jumped, and as he jumped he turned to the right and the car brushed his right leg. The boy was not touched by the car. Mrs. Phillips and the two little girls were behind Mr. Phillips. All three of them were hit by the defendant's car. Mrs. Phillips and the younger daughter, aged four, were injured; the older daughter, aged six, was fatally injured and died about three hours later. Mr. Bolen had already crossed the street when the accident occurred.

Mr. Phillips testified that while he was traveling the western half of Summit Avenue he looked back to his right twice to see whether or not any traffic came into view and was approaching on Summit Avenue from the south. That he was close to the center line when he looked the second time; that he could see a distance of seven to eight hundred feet to the south on Summit Avenue at that time and he saw no traffic approaching; that he did not stop when he looked at that time, but proceeded on toward the northeast corner of Bagley Street. That he saw nothing in view. That he had traveled about five feet from the center of Summit Avenue east toward the northeast corner of Bagley Street and Summit Avenue when he heard the screaming of tires. This witness testified that the defendant's car came to a complete stop within eight or ten feet after it struck his wife and children.

Mrs. Phillips testified that when she and her two daughters reached the northwest intersection of Bagley Street and Summit Avenue, she stopped and looked both ways to see if there were any cars coming. That she did not see any traffic approaching from either direction. That she then started across the street behind her husband; he was about five feet in front of her. "I was struck by the car. When I first noticed the car it looked to be about 15 feet from me. He had his brakes on. He was

sliding when I first saw him. He had his lights on. At that time, I and my children were about the center of the street." This witness was permitted to testify over the objection of the defendant that in her opinion the defendant's car was traveling fifty-five miles per hour when she saw it approaching her. That when she saw the car approaching she stopped; that she and her two children were at a standstill at the moment the three of them were hit. On cross-examination Mrs. Phillips testified, "As I approached the center of the street and from the time I left the curb on the northwest corner until the time I arrived about the center of the street, I continued looking right and left. I did not observe any traffic approaching from my right or from the south as I approached the center of the street. I can see a distance of some 700 to 800 feet south on Summit Avenue; nothing to obstruct the view there. I say that I arrived about the center of the street and heard the screaming of brakes. Up to that time I had not observed any traffic approaching from the south. I looked to my left and when I heard the screaming of brakes, I looked back to my right and he was almost on me, and I was right about the center at that time. . . . I could have been a foot or two beyond the center line. When I heard the screaming of tires, I saw my husband give the little boy a shove and I thought he had room to go between us and that is why I stopped. At the time I saw my husband give the little boy a shove, I had seen the automobile. . . . I do not know how far the car traveled after we were struck. I don't know whether the car came to a stop almost immediately after striking us or not. I always walk kind of fast to get across the street as soon as I can, but you can't walk too fast with two children. The game had already started, but we were not in too much of a hurry to get over to the game to see if traffic was coming or not. I continued looking both ways and I can't understand why I didn't see this car. The car was in the street, but I just didn't see it until I heard the brakes crying."

John R. Dixon, a police officer of the City of Greensboro, reached the scene of the accident immediately after it occurred. He testified the street lights were burning; that one is located in the center of Summit Avenue about the southern curb line of Bagley Street; that the other one is in the center of the avenue a little to the north of the northern portion of the intersection. The lights at the stadium are not focused to throw the light over on Summit Avenue. They are shielded to focus the light on the playing field. That the defendant's car was in the driving lane immediately east of the center line headed north. The front of the car was a little further to the right than the rear of the car. That he observed some skid marks; that those skid marks led up to the wheels of the defendant's car; that he found distinctive tire marks leading up to the car. The length of the tire marks was fifty-two feet from the front of the

defendant's Chevrolet automobile; that the automobile was about sixteen feet long. Automobiles were parked on either side of Summit Avenue to the north and south of Bagley Street except for the no-parking spaces. Twenty-five feet from the northeast intersection of these streets were reserved for a bus stop, and a similar space on the avenue at the southeast intersection of the streets was also designated as a bus stop. While eighty feet north of the northwest intersection of the streets on the west side of Summit Avenue were reserved for such purpose; that there is no pedestrian lane marked off at this street intersection across Summit Avenue. This witness further testified that the collision took place in a residential area; that the highway was dry at that time and the surface of Summit Avenue in that intersection is fairly smooth; there is asphalt top. That there is no traffic control signal there at that point and there were no traffic officers out there on this occasion directing traffic; that he talked with the defendant; that the defendant said he never did see the people he struck until after they were hit; that he slowed down his car about the time he entered the intersection for some pedestrians that he saw in the street, that was when he applied his brakes; that his car moved about ten feet from where the injured parties were struck. The officer stated that he noticed an odor on the defendant's breath. He had an odor of some type of alcohol on his breath. "I smelled the odor of alcohol on Mr. Becker's breath there, and, of course, observed his condition. After this accident occurred, I told him to take his car and go on home and that I was citing him on a charge of careless and reckless driving. I did not issue a process for driving intoxicated because it was my opinion that he was not under the influence of intoxicants."

The defendant testified that on the night in question he was driving a 1951 model two-door Chevrolet; that he had left his home on Percy Street to go to his mother-in-law's house to get his son. That he entered Summit Avenue from the west on Percy Street, two blocks south of Bagley Street; that he was proceeding north on Summit Avenue at a speed of between thirty and thirty-five miles per hour; that the headlights on his car were burning and in proper condition at the time; that as he approached the intersection of Bagley Street he was in the lane for traffic next to the center line. "I approached Bagley Street going north and I noticed some figures in front of me, and I applied my brakes and there were two figures that went off slightly to the right at that point. . . . As I approached and saw these people, I applied my brakes immediately. I didn't have time for a horn, they appeared so suddenly. . . . When the collision occurred, my car was still moving. . . . It seemed to me just as soon as I struck them, I stopped. . . . It took a couple of seconds to fully realize what had happened." On cross-examination the defendant testified that as he came down Summit Avenue he did notice

that there were cars parked solidly up to within fifty feet of Bagley Street. He did not notice cars which were parked north of Bagley Street on Summit Avenue until after the accident; that his lights were on low beam and did not reflect that far. That he did not hear any noise, the public address system or any cheering coming from the direction of the Stadium. "As I approached that intersection, it did not dawn on me at all that there was a ball game going on. . . . It's pretty hard to judge how far I was from Mr. Phillips when I first saw him. . . . I'd say that I was somewhere in the vicinity of the southern corner of Bagley Street when I first saw them to apply my brakes. There is a certain amount of reaction time involved after I saw the man. I clamped down on my brakes at the first instant. . . . I was looking straight ahead and had my eyes on Mr. Phillips and his son. . . . I don't know what part of my vehicle struck Mrs. Phillips and the children (the police officer testified there were no marks on the car to show what part of it struck Mrs. Phillips and the two girls). I was not looking straight ahead when I struck them . . . Mr. Phillips and his son had just gotten by the car. . . . My eyes were diverted in that direction . . . I applied my brakes to the best of my ability to avoid hitting these people."

The defendant admitted that earlier in the afternoon, between the hours of two and five o'clock, he drank two or three cans of beer at his home. Several witnesses testified that the reputation and character of the defendant is good. Whereupon, the State recalled the defendant for further cross-examination, and he testified that he had been an alcoholic and that he voluntarily requested his physician to make arrangements for him to enter the Rehabilitation Center at Butner. That he took the full course of treatment at that institution over a period of twenty-eight days and was discharged as cured. That he had been to Butner only once and that was a month or so before this accident. That since he left Butner he drank an occasional beer.

Verdict: Guilty of involuntary manslaughter.

Judgment: Imprisonment in the State's Prison for a term of not less than five years nor more than seven years. The defendant appeals, assigning error.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*Adam Younce for defendant.*

DENNY, J. The defendant's assignment of error No. 3 challenges the correctness of the ruling of the court below in refusing to sustain his motion for judgment as of nonsuit interposed at the close of the State's evidence and renewed at the close of all the evidence.

As a basis for consideration of the above assignment of error, we have endeavored to set forth a comprehensive and accurate statement of the pertinent parts of the evidence adduced in the trial below.

The result of this accident is indeed regrettable, irrespective of what happens to the defendant. However, his conviction should not be upheld unless the record discloses evidence of culpable negligence on his part.

As a preliminary question and before disposing of the above assignment of error, we shall consider the assignment of error based on the exception to the admission of the evidence of Mrs. Phillips as to the speed of the defendant's car at the time of the accident. Mrs. Phillips testified that in her opinion the defendant's car was traveling fifty-five miles per hour when she first saw it at a point fifteen feet from her. She also testified that after she saw the car only fifteen feet away, she looked toward her husband and saw him shove her son out of the pathway of the car before it struck her and the girls. It is a mathematical fact that a car traveling fifty-five miles an hour travels eighty-one feet per second. The undisputed evidence on this record, if Mrs. Phillips was correct in her estimate of the distance between her and the car when she first saw it, is that the car stopped within twenty-five feet of that point. It would seem as a matter of common knowledge and experience that it would have been a physical impossibility for the defendant to have stopped his car in so short a distance if at the time in question it was traveling at such a rate of speed. *Ingram v. Smoky Mountain Stages,* 225 N.C. 444, 35 S.E. 2d 337. As the late *Chief Justice Stacy* said in *S. v. Hough,* 227 N.C. 596, 42 S.E. 2d 659, "Physical facts speak their own language and are often heard above the voices of witnesses." *Atkins v. Transportation Co.,* 224 N.C. 688, 32 S.E. 2d 209; *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88.

There is no controversy as to the general rule applicable to the admission of evidence as to speed. *Hicks v. Love,* 201 N.C. 773, 161 S.E. 394; *Tyndall v. Hines Co.,* 226 N.C. 620, 39 S.E. 2d 828; *S. v. Roberson,* 240 N.C. 745, 83 S.E. 2d 798.

In 5 Am. Jur., Automobiles, section 651, page 860, *et seq.,* it is said: ". . . it is generally held that one of reasonable intelligence and ordinary experience in life is presumed to be capable, without proof of further qualification, to express an opinion as to how fast an automobile which came under his observation, was going at a particular time. . . . The question as to the opportunity of the witness to judge, under the particular circumstances, the speed of an automobile, has been held, as a general rule, to go to the weight of his testimony rather than to its admissibility. . . . *But where a witness has had no reasonable opportunity to judge the speed of an automobile, it is error to permit him to testify in regard*

*thereto,"* citing Anno. 70 A.L.R. 547. (Italics ours.) See also Anno. 94 A.L.R. 1192.

In *Davidson v. Beacon Hill Taxi Service,* 278 Mass. 540, 180 N.E. 503, the witness was not allowed to give his estimate of the speed of a taxi which struck the plaintiff. Upon appeal the Court said: "The undisputed evidence of the witness was to the effect that he ran out of the alley into the street, and saw the defendant's taxicab for the first time when it was 15 feet away. The intervening time from when he first saw it until the plaintiff was struck could have been at most only a few seconds. During that time he was running to escape being struck. It is inconceivable that he could have had any intelligent opinion as to the speed of the taxicab in these circumstances. His estimate of its speed was too unreliable and untrustworthy to aid the jury upon that question. It was of no value as evidence." *Bowling Green-Hopkinsville Bus Co. v. Edwards,* 248 Ky. 684, 59 S.W. 2d 584; *Challinor v. Axton,* 246 Ky. 76, 54 S.W. 2d 600; *Mutti v. McCall,* 14 La. App. 504, 130 So. 229.

In our opinion, under the facts and circumstances disclosed by the evidence of Mrs. Phillips, she had no reasonable opportunity to judge the speed of the defendant's car, and her evidence with respect thereto was without probative value.

When the above evidence is disregarded, there is nothing to contradict the evidence of the defendant that he was proceeding north on Summit Avenue in the proper traffic lane at a legal rate of speed and saw Mr. Phillips and his son come into view and enter his lane of traffic about the time he entered the southern margin of the intersection of Summit Avenue and Bagley Street. True, the tires of the defendant's car left marks visible for a distance of fifty-two feet from the front of the car at the point where it was stopped. The wheels of the car skidded for some distance before the impact. The officer did not testify as to the length of the skid marks as compared with the tire marks. According to defendant's testimony, he slowed down as he entered the intersection and put on his brakes as quickly as he could when he saw some pedestrians ahead. These turned out to be Mr. and Mrs. Phillips and their children.

It is settled law with us that "a want of due care or a failure to observe the rule of the prudent man, which proximately produces an injury, will render one liable for damages in a civil action, while culpable negligence, under the criminal law, is such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *S. v. Rountree,* 181 N.C. 535, 106 S.E. 669; *S. v. Whaley,* 191 N.C. 387, 132 S.E. 6; *S. v. Cope,* 204 N.C. 28, 167 S.E. 456; *S. v. Lowery,* 223 N.C. 598, 27 S.E. 2d 638; *S. v. Wooten,* 228 N.C. 628, 46 S.E. 2d 868; *S. v. Blankenship,* 229 N.C. 589, 50 S.E. 2d 724.

In the case of *S. v. Stansell,* 203 N.C. 69, 164 S.E. 580, this Court, speaking through *Adams, J.,* said: "Ordinary negligence is based on the theory that a person charged with negligent conduct should have known the probable consequences of his act; culpable negligence rests on the assumption that he knew the probable consequences but was intentionally, recklessly, or wantonly indifferent to the results."

If it be conceded that the evidence on this record is sufficient to support the view that the defendant was not keeping a proper lookout under the conditions as they existed at the time of the accident, in our opinion it is not sufficient to show culpable negligence on his part. *S. v. Lowery, supra; S. v. Satterfield,* 198 N.C. 682, 153 S.E. 155; *S. v. Tankersley,* 172 N.C. 955, 90 S.E. 781, L.R.A. 1917C, 533.

The defendant's motion for judgment as of nonsuit should have been allowed.

Reversed.

PARKER, J., dissents.