THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID DIETSCHWEILER, Defendant-Appellant.

(Nos. 56944, 57821 cons.;

First District (1st Division)—July 15, 1974.

Tully and Roddy, of Chicago (Joseph V. Roddy, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

David Dietschweiler (defendant) was indicted for involuntary manslaughter. (Ill. Rev. Stat. 1969, ch. 38, par. 9—3.) After a bench trial, he was found guilty but was admitted to probation for 5 years on condition that the first year be spent in the House of Correction under the Work Release Program. (Ill. Rev. Stat. 1971, ch. 38, par. 123—7.) He appeals.

In this court, defendant contends that the trial court erred in rejecting the testimony of two reconstruction experts and in permitting introduction of evidence regarding a prior suspension of defendant's driver's license for lack of "financial responsibility insurance." He also urges that he "is entitled to an acquittal because of the trial judge's erroneous finding of guilty on the charge of involuntary manslaughter"; the trial judge erred in allowing evidence of defendant's refusal to take a breathalyzer test and defendant did not intelligently and effectively waive his right to

a jury trial. In addition, an issue regarding constitutionality of the statute under which defendant was indicted is raised in his reply brief.

The State responds that the expert testimony was properly excluded because seven eyewitnesses testified to the speed of defendant's car so that the expert testimony was unnecessary and impermissively speculative; evidence of the prior suspension of defendant's license was properly received for purposes of impeachment; the trial court correctly found defendant guilty of involuntary manslaughter since the indictment properly charged that offense; admission of evidence of defendant's refusal to take a breathalyzer test was harmless error and the waiver of jury trial by defendant was understanding and effective.

It is unnecessary to state the testimony of each and all of the witnesses *seriatim*. A clear and sufficient understanding of the facts can be obtained from a description of the location involved and a summary of the basic evidence. On May 6, 1971, about 11:30 P.M., defendant was driving his automobile, alone, south on Harlem Avenue, in Chicago. In that area, Harlem Avenue has three lanes of traffic for travel in each direction with a median strip. At the block in question, 5600 south, the street narrows to two lanes in each direction. At that time, the street was being repaired. The construction zone was marked with barricades and flashing yellow lights. That morning the street had been oiled for repaving. The speed limit posted on Harlem Avenue was 35 miles per hour.

The Candlelight Theater is on the west side of Harlem Avenue in this 5600 block. Immediately north is a parking lot and next north a gasoline station. There is a large parking lot on the east side of the street. At the time in question, approximately 200 to 300 people were leaving the theater. Some were crossing Harlem Avenue to the parking facility on the east side. Some 50 to 75 people were on the sidewalk to the west in the area of the parking lot and the gasoline station. Defendant testified that at this time there were no pedestrians on the street or on the median strip and that he saw only a couple of people on the sidewalk. He did see the barricades and yellow flashing lights as he approached the scene of the occurrence.

Including police officers, the State called nine witnesses. Steve and Carol Fagiano had left the performance and entered their automobile. They were driving from the gasoline station in an easterly direction, intending to make a right turn to go south on Harlem Avenue. They both testified that there was another automobile ahead of defendant's car proceeding at a speed of about 20 miles per hour. This car had slowed to permit pedestrians to cross the street to the east parking lot. Defendant cut around this automobile to pass it on the right. However, he

failed to correct his direction and struck the left front of their automobile with the right front of his own. At this time, the Fagiano car was either backing up to avoid the impact or was standing still. Also, there is varying testimony as to whether it was partly on the street or entirely within the gas station driveway at impact. There is testimony that after the collision, defendant's car veered sharply to the left toward the median for several feet, then back to the right, jumped the curb, knocked down and injured two pedestrians, pinned a third against a nearby building and stopped. The third pedestrian was killed.

An investigating officer testified that he saw no skid marks from defendant's car before the impact with the Fagiano car. He measured skid marks extending 56 feet from the point of collision to the curb and 10 feet of skid marks on the sidewalk. The distance from impact to the building against which deceased had been pinned was 118 feet. The officer found no indication that defendant's car had gone left toward the median and then right. Two other witnesses for the prosecution testified, however, that defendant's car had first veered to the left toward the median. This officer testified that in his opinion the minimum distance that defendant's car could have traveled, assuming that it darted left toward the median after impact, was 118 feet. In his opinion, the impact occurred in the curb lane of Harlem Avenue.

Another police officer testified that he interviewed the defendant in the station shortly after midnight. He found it extremely difficult to get answers. Defendant staggered when he walked, swayed when he turned and his breath smelled strongly of alcohol. In the opinion of the officer, defendant was then under the influence of alcohol. He told the officer that he had been drinking and that he had consumed four bottles of beer. He refused to take a breathalyzer test, a finger to nose test and a coin test. Two officers testified that defendant gave them different versions of the occurrence: that he was going south in the left lane when the Fagiano car pulled out and struck him; he was in the center lane when the car pulled out of the driveway and he could not stop in time; and also that he struck the left front of the other car with the left front of his car.

As regards the evidence of speed, Mrs. Fagiano estimated the speed of the defendant's car at 60 to 70 miles an hour. She had observed the vehicle for 4 to 5 seconds before the collision. Mr. Fagiano estimated the speed at 55 to 70 miles per hour after an observation of 4 to 7 seconds. He also told two police officers that defendant was driving at 60 miles per hour. Father Mens, one of the pedestrians, estimated defendant's speed at 60 miles an hour. He stated that it took 1 second from the impact until the car pinned the deceased against the building.

Kathleen Kumiega testified that defendant was going too fast because people were crossing Harlem Avenue. Carmen Domingo described the speed as "very fast." Dorothy Kapsa, another pedestrian, testified that the speed was 40 to 45 miles per hour after impact as defendant's car approached her and that it took about 5 seconds for the car to stop thereafter. At the coroner's inquest, she had fixed the speed as at least 35 miles per hour.

Defendant testified that his speed was not over 20 miles per hour. He made this same statement to a police officer at the scene. He also testified that he looked at his speedometer immediately before collision with the Fagiano automobile and that he was then driving 30 miles per hour. A police officer testified that he had retraced defendant's path for 600 feet on Harlem Avenue and that in his opinion it would be possible for an automobile to reach a speed of 70 miles per hour from the point of entry on Harlem Avenue to the collision.

On the issue of intoxication, the police officer who arrived at the scene testified that he saw defendant leaning and swaying against a large flower pot in front of the theater and then watched him walk. Defendant had an odor of alcohol on his breath. In the opinion of this officer, he was under the influence of alcohol. Defendant testified that he went to a tavern after work on the date in question and drank four beers in the period of about 5 hours prior to 10 P.M. This statement is corroborated by a friend of defendant named James Klein. Their testimony is that each of them ate four hot dog sandwiches during this period of time. Defendant's witness expressed the opinion that defendant was not under the influence of alcohol when they separated at 10:15 P.M. He testified that defendant had a good reputation for truth, veracity and sobriety.

Another officer testified that defendant told him that he had a few beers at a friend's home. Defendant explained this with a statement that, since he had been in an accident, he thought it would sound better if he told police he was at a friend's home. Defendant also testified that, after he left Klein, he went to a parking lot where he spoke to a friend of his, made another stop for a short time, and then drove south on Harlem Avenue toward the theater.

Defendant's employer testified that defendant had an excellent reputation and that he had never seen him under the influence of alcohol. He employs defendant as a driver and defendant drives approximately 30,000 miles a year in performing his duties. Defendant testified that he was not under the influence of alcohol at the time of the accident. He testified that he saw no traffic to the right and thereupon changed lanes to pass the other car. At that time, he was going approximately 30 miles per hour. A car came out of the gas station and he could not stop in time.

He jammed on the brakes and lost control. As a result of the accident, defendant was somewhat stunned and had a small cut on the top of his nose. He refused medical attention suggested to him by the police.

■■ In our opinion, examination of this record discloses that there is ample evidence to support the finding of guilt of involuntary manslaughter. The scene presented is one in which it would be incumbent upon a person driving at that time and location to exercise extra care to avoid people crossing the street and automobiles which might be driving out from the gasoline station and parking area. Also, the flashing lights in connection with road repair should have warned any reasonable driver to use a great degree of caution. The necessary conclusion is that defendant was driving recklessly at an unreasonable rate of speed; that he was somewhat under the influence of alcohol; and that he executed a reckless maneuver in passing the other automobile to the right. This is established by the testimony of the witnesses as well as by undisputed physical facts.

■■ Defendant seeks primarily to challenge the prosecution as regards speed but even his own evidence showed that he did drive recklessly in swerving to pass another automobile on its right at a speed of 30 miles an hour in a hazardous area, crowded with pedestrians and other vehicles. At most, the evidence adduced by defendant raises an issue of credibility as to some phases of the case which it was the duty of the trial court to decide. We are not permitted to encroach upon the function of the trier of fact or to "* * * set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused." (*People v. Reese*, 54 Ill.2d 51, 57, 58, 294 N.E.2d 288.) This record leaves us without any reasonable doubt of guilt. We are in accord with the finding of guilty of involuntary manslaughter.

Defendant's first contention revolves about expert testimony excluded by the court upon objection by the State. The court permitted counsel for defendant to make extensive offers of proof consisting of questions to each of the witnesses and their answers. A brief summary of this testimony is pertinent here.

■■ John Clark was employed as an insurance adjuster for 20 years. He did not examine either of the automobiles. Based upon his examination of photographs received in evidence, which show both cars in the same condition as they were immediately after the occurrence, this witness expressed an opinion which went primarily to the issue of damage to the vehicles and an estimate of the cost of repairs. His testimony was properly excluded. The witness was not a reconstruction expert with sufficient knowledge of any pertinent subject matter. His background

mishap. See also *People v. Sanchez,* 11 Ill.App.3d 1079, 1083, 1084, 297 N.E.2d 230, and cases therein cited; also *Sheldon Livestock Co. v. Western Engine Co.,* 13 Ill.App.3d 993, 998, 301 N.E.2d 485.

The courts of Illinois have had occasion to consider the propriety of expert testimony by reconstruction experts in automobile cases. One of the most recent expressions by the supreme court is *McGrath v. Rohde,* 53 Ill.2d 56, 289 N.E.2d 619. This case affirms the decision of the appellate court written by Mr. Justice Davis. (130 Ill.App.2d 596, 265 N.E.2d 511.) In *McGrath,* the supreme court quoted its previous language from *Plank v. Holman,* 46 Ill.2d 465, 471, 264 N.E.2d 12. One of the most recent expressions of the appellate court upon this subject is *Dauksch v. Chamness,* 11 Ill.App.3d 346, 296 N.E.2d 592.

■■ There is no need to cite and review the remaining decisions in this particular field because the pertinent principle is authoritatively stated in the *McGrath* opinions as well as in *Plank* and *Dauksch.* The proper legal rule is that in automobile cases the opinions of reconstruction experts may not be used as a substitute for eyewitness testimony where such is available. They may be used in addition to eyewitness testimony when it becomes necessary to rely on specialized knowledge or scientific principles beyond the range of understanding of the average juror. In cases where eyewitness testimony is available, the use of the experts is left to the discretion of the court within the guiding principle that "* * * the use of such testimony should be the exception and not the rule. *Abramson v. Levinson* (1969), 112 Ill.App.2d 42, 50." *McGrath v. Rohde,* 130 Ill.App.2d 596, 599.

■■ Applying this principle to the case at bar, the narrow issue to be determined by the trier of fact in this phase of the case was the speed at which defendant was operating his automobile prior to or at impact and thereafter. Seven eyewitnesses testified upon this subject. The opinions of four of them were: speed of 60 miles per hour; 40 to 45 miles per hour; one testified "very fast"; and another "too fast for conditions." All of these estimates were of speed after the collision between defendant's car and that driven by Fagiano. Defendant testified that his speed was 30 miles per hour immediately prior to impact. An estimate of speed of a motor vehicle generally is considered a matter of common observation within the knowledge of any person of ordinary intelligence. (*Conway v. Tamborini,* 68 Ill.App.2d 190, 194, 215 N.E.2d 303. Also *Birnbaum v. Kirchner,* 337 Ill.App. 25, 85 N.E.2d 191, and cases therein cited.) There was no need for the court to use or to depend upon expert testimony. The mere fact that the testimony of the other witnesses was in conflict or conflicted with the testimony of defendant did not in itself justify or require the use of expert testimony any more than would conflict upon

and expertise were limited to the cost of repairing the vehicles, which was far from the issue before the court. See *Gibson v. Healy Brothers & Co.*, 109 Ill.App.2d 342, 352, 353, 248 N.E.2d 771.

Willard Alroth was a qualified and experienced traffic engineer. He also examined only the photographs of both automobiles. He had never seen either vehicle or the scene of the occurrence. He estimated that at impact defendant's automobile was being driven from 20 to 40 miles per hour. He also testified that defendant's vehicle was "traveling initially" about 35 miles per hour. He also stated that the "pre-impact speed", apparently having reference to speed an instant before impact, would be from 25 to 32 miles per hour.

John Ellis is admittedly qualified in automobile matters from a technical point of view. He examined the photographs in question. In addition, on November 24, 1971, more than 6 months after the occurrence, he examined defendant's automobile and also the scene of the occurrence. He testified that the car had a broken tie rod which would make steering virtually impossible. He expressed the opinion that the speed of defendant's automobile at the time of impact was from 20 to 35 miles per hour.

In our opinion, the trial court acted properly in excluding the testimony of these witnesses on objection by the State. These rulings are supported by a number of reasons each sufficient in itself to justify the result.

The witness Alroth never viewed the scene of the occurrence and never examined the automobiles. Mere study of the photographs is not in itself a sufficient foundation upon which to predicate an opinion of speed. He must necessarily have obtained much of the basis for his opinion from facts stated to him by other people concerning which he had, at best, only the questionable personal knowledge that comes from examination of pictures. His opinion, based upon matters reported privately to him, would be valueless. *People v. Black*, 367 Ill. 209, 10 N.E.2d 801.

As regards the testimony of the expert Ellis, he visited the scene and examined defendant's car more than 6 months after the occurrence. He did not examine the other vehicle. There was no evidence that the defendant's vehicle, the wall it struck, or any other thing or object which he saw at the scene, and which may have affected his opinion, were in the same condition as on the night of the collision. In *People v. Parr*, 133 Ill.App.2d 82, 272 N.E.2d 712, this court held that there was no proper foundation for the testimony of a reconstruction expert where he examined both vehicles 8 days after the occurrence and there was no evidence that they were in the same condition as at the time of the

any other factual issue. (See *Wolpert v. Heidbreder*, 21 Ill.App.2d 486, 495, 158 N.E.2d 421.) "There is no place for the opinion of a reconstruction expert if the determinative facts are otherwise established by credible, physical or eyewitness evidence." *Abramson v. Levinson*, 112 Ill. App.2d 42, 50, 250 N.E.2d 796.

Defendant relies upon *Fannon v. Morton*, 228 Ill.App. 415. There, an expert was permitted to testify as to the speed of an automobile which dragged its tires on the pavement for 35 to 40 feet with the brakes set. The court held that the hypothetical question used to bring out this testimony was proper. The court did not consider the basic issue as to the propriety of expert testimony. The present law of Illinois upon this subject was not developed at the time. *Fannon* was decided in 1923, years prior to the decisions cited above. *Fannon* was the subject of comment in a later decision by this court in *People v. Everist*, 52 Ill.App.2d 73, 79, 80, 201 N.E.2d 655. In *Everist*, an involuntary manslaughter case, the State used the testimony of a reconstruction expert concerning speed. The court held that since defendant made no objection to the hypothetical questions by means of which the expert stated his opinion, the right to object had been waived. (52 Ill.App.2d at 80.) Neither of these cases supports defendant's contention.

One more thought requires expression. The court permitted counsel for defendant to make extensive offers of proof by means of questioning each of the witnesses when on the stand. Defendant testified that he was driving 30 miles an hour. He saw the other automobile at the gas station driveway and jammed on his brakes. He testified that he "hit the brakes." If this were true, his speed at impact with the other automobile was necessarily less than 30 miles an hour. The opinions of the experts were thus indecisive. They could not specify the speed as accurately as defendant did since he testified that he had looked at his speedometer at the time. Alroth gave a range of speed at impact from 20 to 40 miles per hour and Ellis from 20 to 35 miles per hour.

■■ Furthermore, speed in itself is only one aspect of the issues in defining the type of reckless misconduct in driving an automobile which constitutes guilt of involuntary manslaughter. Other issues presented by this record are the degree of intoxication of the driver and all of the many remaining conditions surrounding the occurrence. Reckless performance of acts likely to cause death or great bodily harm is the gravamen of involuntary manslaughter. (Ill. Rev. Stat. 1971, ch. 38, par. 9—3.) "Recklessness" is defined by the Criminal Code as a conscious disregard of "a substantial and unjustifiable risk" which "constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Ill. Rev. Stat. 1971, ch. 38, par. 4—6. See *People v.*

*Maldonado,* 3 Ill.App.3d 216, 225, 278 N.E.2d 225.) The rulings of the trial court in rejecting the tendered opinions of the experts were completely proper.

Defendant testified on direct examination that the only driving accident he ever had that "sticks" in his memory was about 10 years ago. This involved only property damage caused by a truck being driven into the rear of his vehicle. He had no speeding violations in the last 2½ years. On cross-examination, he testified that his driver's license had been suspended in 1957 but he did not think this was because of an accident resulting from an incident in which he drove another person's car which was uninsured. He did not recall that his license was again suspended in 1958 for lack of financial responsibility. He thought that he was found guilty of speeding on March 10, 1967, but did not remember being found guilty of speeding again on September 11, 1968. No objections were made to these matters brought out on cross-examination other than a general objection regarding suspension of the driver's license in 1957.

The parties then stipulated by their attorneys that defendant's driver's license was revoked in 1957 and also in 1958 for lack of financial responsibility after motor vehicle accidents; that defendant was found guilty of speeding in April of 1967 and also in September of 1968. Defendant urges that the above constituted reversible error. We will consider this issue even though there is a serious question of waiver because of failure to object in the trial court. *People v. McAdrian,* 52 Ill.2d 250, 253, 287 N.E.2d 688; *People v. Morris,* 6 Ill.App.3d 136, 139, 285 N.E.2d 247.

■■ Defendant depends primarily upon *People v. Montgomery,* 47 Ill. 2d 510, 268 N.E.2d 695. There, defendant testified generally on direct examination regarding the offense for which he was on trial. He did not testify on the subject of his freedom from previous convictions. Defendant's previous conviction of an infamous felony was shown by the State for impeachment as a general attack upon his credibility. In the case before us, quite to the contrary, defendant went further and testified specifically on direct examination regarding his freedom from motor vehicle accidents and from convictions for speeding. It was entirely proper for the State to impeach him by contradiction of his own testimony given on direct examination. The State was entitled to correct the false impression given by defendant's direct examination regarding his alleged lack of previous accidents and speeding violations.

In *People v. Nastasio,* 30 Ill.2d 51, 195 N.E.2d 144, the defendant testified on direct examination to his prior conviction of infamous and other crimes and also that he had not been convicted of any additional crimes not mentioned. The supreme court held that the State properly

cross-examined him concerning other convictions. (30 Ill.2d 51, 58.) Note also *People v. Bey*, 42 Ill.2d 139, 246 N.E.2d 287, applying the same principle to a situation where a defendant voluntarily testified to a previous conviction but did not affirmatively state that this had been his only conviction. Other decisions approving this type of cross-examination by the State are: *People v. Sevastos*, 117 Ill.App.2d 104, 252 N.E.2d 745; *People v. Longstreet*, 2 Ill.App.3d 556, 559, 276 N.E.2d 825; and *People v. Scott*, 82 Ill.App.2d 109, 117, 118, 227 N.E.2d 72.

Defendant's next contention is actually concerned with the form of the indictment. He takes the position that he was charged only with reckless homicide and not with involuntary manslaughter so that the finding of the court that he was guilty of the greater offense of involuntary manslaughter was improper. The pertinent statute (Ill. Rev. Stat. 1971, ch. 38, par. 9—3) refers to two separate offenses. Section 9—3(a) defines involuntary manslaughter as lawful or unlawful acts recklessly performed which are likely to cause death or great bodily injury. It includes all acts of such nature which cause death. This offense is a Class 3 felony under the Illinois Unified Code of Corrections. Section 9—3(b) is a lesser included offense called reckless homicide. It was added to the statutory framework of Illinois criminal law in 1949. It pertains only to situations in which the acts that caused the death consist of driving a motor vehicle. It is designated a Class 4 felony under the Unified Code of Corrections. These matters are carefully brought out in the committee comments to section 9—3. (Smith Hurd Ill. Ann. Stat., ch. 38, par. 9—3 at p. 246.) The same distinction is expressed and analyzed in *People v. Garman*, 411 Ill. 279, 285, 103 N.E.2d 636.

■■ The indictment in this case clearly charges defendant with involuntary manslaughter but it erroneously designates the section of the statute violated as "Section 9—3(b)." It has been decided, however, that the requirement for inclusion of the statutory provision in the indictment is a mere formality. If defendant had aptly raised this apparent defect by motion to dismiss, it could readily have been corrected by amendment. (*People ex rel. Goznelli v. Brantley*, 49 Ill.2d 383, 384, 385, 275 N.E.2d 396.) This error is formal, nonjurisdictional and inconsequential. We note also that an indictment for involuntary manslaughter referring to section 9—3(b) was held legally adequate by this court. (*People v. Adams*, 113 Ill.App.2d 276, 280, 281, 282, 252 N.E.2d 65.) Similarly, in a case involving a complaint for reckless driving, this court held an erroneous citation of the statute did not void the complaint. *People v. Parr*, 130 Ill. App.2d 212, 219, 220, 264 N.E.2d 850, and cases therein cited.

■■ A review of this record convinces that all parties understood and that defendant was on trial for involuntary manslaughter and they acted ac-

cordingly. The original complaint against defendant charged him with that crime; the indictment alleged the crime by proper name; the indictment was accordingly endorsed; the court clearly announced a finding of guilty for involuntary manslaughter and referred to the penalty that could be imposed as a penitentiary sentence of from 1 to 10 years; the finding of guilty and judgment in the common law record are in accord as are the order granting probation, the bond signed by defendant for admission to probation, the report on disposition made to the Secretary of State and even defendant's notice of appeal to this court. Defendant's argument that he was charged with reckless homicide is refused by the record.

Defendant seizes eagerly upon one insignificant statement by the trial court in which he referred to section 9—3 of the statute and expressed the opinion that he was interested only in paragraph (b) thereof. When the entire page of this portion of the record is read, it amply appears that this reference of the court was actually to the effect that the State could prosecute for reckless homicide or for involuntary manslaughter, as it desired. The trial court was entirely correct in that statement. It was the responsibility of the State's Attorney of Cook County to consider the evidence and to determine for which of the two crimes defendant should be tried. *People v. Rhodes*, 38 Ill.2d 389, 231 N.E.2d 400. See also *People v. Keegan*, 52 Ill.2d 147, 286 N.E.2d 345, which is, in turn, cited in *People v. Chambers*, 15 Ill.App.3d 23, 303 N.E.2d 24, and in *People v. Williams*, 15 Ill.App.3d 294, 304 N.E.2d 150, which cites *People v. Morrissey*, 52 Ill.2d 418, 288 N.E.2d 397.

■■ In his reply brief, defendant for the first time attacks the constitutionality of the statute upon which the prosecution was based. This contention was based upon *People v. McCollough*, 8 Ill.App.3d 963, 291 N.E.2d 505, which concluded that the Act was unconstitutional because it vested discretion in the State's Attorney to choose whether he would prosecute for a felony or a misdemeanor and thus violated the equal protection guarantees of the constitution of Illinois. This contention has been disposed of by reversal by the Supreme Court of Illinois in *People v. McCullough*, 57 Ill.2d 440, which rejected this argument and held the statute constitutional. This opinion was filed while this court had the within appeal under advisement after oral argument had been heard.

Defendant's next contention involves evidence given by a police officer called by the State who testified, over objection by defendant, that defendant told him that he had been drinking. He asked defendant if he wished to take a breathalyzer test. Defendant responded that he did not. This occurred after defendant had received Miranda warnings. Defendant urges that this evidence was inadmissible and prejudicial.

It is true that the applicable statute provides that evidence of a refusal to submit to a chemical test of alcoholic content in the blood is inadmissible in any civil action or in any criminal action under that portion of the Illinois Vehicle Code which provides penalties for drivng a vehicle while under the influence of intoxicating liquor. (See Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(h).) However, the statute by its terms does not apply to a prosecution for manslaughter of which defendant was found guilty. Defendant was also charged under the Illinois Vehicle Code for driving under the influence of intoxicating liquor. The court found him not guilty upon this count of the indictment. This finding cogently demonstrates lack of any prejudice to the defendant from this testimony by the police officer. As above shown, there was ample evidence to support the finding of the court upon other grounds.

Furthermore, in this situation we are required to presume that the trial judge as the trier of fact "considered only admissible evidence and disregarded inadmissible evidence in reaching his conclusion." (*People v. Clarke*, 50 Ill.2d 104, 108, 277 N.E.2d 866.) This principle operates effectively to dispose of several points argued in behalf of defendant.

Defendant's final contention is directed to the effectiveness of his jury waiver. The record indicates that there had been a conference by the court and counsel for both sides prior to trial. When the case was called for trial, the judge advised defendant that he had the right to be tried by a jury. He then asked if defendant wished to waive that right and be tried by the court. The defendant stated that he would rather have a jury trial. The court responded that the jury would be called for 2 P.M. that day and that "everything we talked about in there goes out the window * * *." Counsel for defendant requested that the case be passed.

That afternoon counsel for defendant advised the trial judge in open court that the jury would be waived and there would be trial by the court. The court then again advised the defendant that he was entitled to a trial by jury to see if they would render a verdict of guilty or innocent. The court asked defendant if he understood that and defendant responded affirmatively. He then asked defendant if he wished to waive that right and be tried by the court. Defendant again responded affirmatively. At the court's request, defendant then signed a jury waiver which appears in the record. Counsel for defendant then again stated that the jury would be waived and there would be trial by the court. Upon this record defendant urges that his waiver of a jury trial was not voluntary.

The Illinois Code of Criminal Procedure provides that "Every person accused of an offense shall have the right to a trial by jury unless understandingly waived by defendant in open court." (Ill. Rev. Stat. 1971, ch.

38, par. 103—6.) In construing this enactment, the courts of Illinois have "repeatedly held that whether or not the waiver of trial by jury has been 'understandingly' made rests on the peculiar facts of each case and cannot be governed by any precise formula." (*People v. Gay*, 4 Ill.App. 3d 652, 654, 281 N.E.2d 738, and cases therein cited.) Defendant was 33 years old at the time of trial and appears from his testimony to be a person of intelligence. In this case, he was advised by an able attorney of his own choice. The attorney advised the court on more than one occasion that defendant wished to waive a jury trial and to be tried by the court. Under circumstances of this kind, the Supreme Court of Illinois has held that the waiver of jury made by counsel in open court in the presence of his client who made no objection was sufficient to indicate that the jury waiver was understandingly made. (*People v. Sailor*, 43 Ill.2d 256, 253 N.E.2d 397.) This record shows that there was ample time for consultation between defendant and his counsel. This decision to waive the jury was not reached at a hurried off-the-record conference but was reached after a conference with the court and after several hours had elapsed. This element completely differentiates the case at bar from situations such as those involved in *People v. Baker*, 126 Ill.App. 2d 1, 262 N.E.2d 7.

■■ In addition, we find no indication of any degree of coercion by the court. The remark by the court, after defendant first stated in the morning session that he did not wish to waive the jury, cannot be construed as indicating coercion by the court or even displeasure. The case before us contrasts sharply with *People v. Rivera*, 34 Ill.2d 575, 216 N.E. 2d 786, cited by defendant. There, the supreme court noted that the remarks of the trial judge were intemperate and resulted in a jury waiver that was not voluntary. It further appears from this record that the court admonished the defendant on two occasions of his right to trial by jury. In this regard the admonitions by the court were complete and proper.

This record presents a situation completely different from *People v. Bell*, 104 Ill.App.2d 479, 244 N.E.2d 321, also relied upon by defendant, where there was actually no statement by defendant's attorney that defendant desired to waive a jury and no admonition by the court advising defendant that he was entitled to a trial by jury. The supreme court has approved a jury waiver signed by a defendant after virtually an identical colloquy between the court and the defendant. (*People v. Alexander*, 45 Ill.2d 53, 256 N.E.2d 785.) We conclude that waiver of jury by defendant in this case was with his complete understanding. We will add here that defendant's general claims of prejudice against him by the trial judge find no support in the record. Having considered all

contentions advanced by defendant, we conclude that the judgment of conviction should be affirmed.

The sentence pronounced by the court, consisting of probation for 5 years combined with detention under the Work Release Program for 1 year, was proper when imposed. (Ill. Rev. Stat. 1971, ch. 38, par. 123—7.) However, as has been frequently and properly held, the provisions of the Illinois Unified Code of Corrections are applicable to this sentence. (*People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269.) As the Unified Code existed on its effective date of January 1, 1973, the trial court could not require imprisonment as a condition of probation except periodic imprisonment under article 7 of the Code. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—3(b).) The former Work Release Program has now been replaced by sentence of periodic imprisonment under the Unified Code. Ill. Rev. Stat. 1973, ch. 38, par. 1005—7—1 to 8.

■■ In view of all of the circumstances regarding defendant disclosed by this record, we think it best to affirm the sentence insofar as it admits defendant to probation for 5 years and to remand the cause for consideration of the wisdom and justice of requiring a year of periodic imprisonment as a condition to the probation already granted. If the trial court sees fit to require defendant to spend some time on periodic imprisonment, it will be necessary for that court to fix the conditions of this part of the sentence under the Unified Code above cited. On the other hand, we should also point out that if defendant had been sentenced to 1 year of imprisonment we would have vacated this portion of the sentence under established authority. See *People v. Licata*, 15 Ill.App.3d 652, 655, 305 N.E.2d 6; *People v. Claudio*, 13 Ill.App.3d 537, 300 N.E.2d 791; *People v. Davis*, 12 Ill.App.3d 1014, 299 N.E.2d 342; *People v. Adkisson*, 12 Ill.App.3d 1015, 299 N.E.2d 145; and *People v. Rhinehart*, 11 Ill.App.3d 859, 296 N.E.2d 781.

Accordingly, the judgment of conviction and imposition of probation for 5 years is affirmed. The cause is remanded with directions to consider whether or not defendant shall be required to spend time on periodic imprisonment; and, if so, the extent and conditions thereof.

Judgment affirmed, cause remanded with directions,

BURKE and HALLETT, JJ., concur,