THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD McDERMOTT, Defendant-Appellant.

First District (5th Division)   No. 84—0370

Opinion filed November 27, 1985.—Modified on denial of rehearing April 4, 1986.

Patrick A. Tuite and Mary L. Mikva, both of Patrick A. Tuite, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (James M. Eberlin, Joan S. Cherry, Christopher J. Cummings, and Joan E. Disis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY* delivered the opinion of the court:

After a bench trial, defendant, Gerald McDermott, was found guilty of two counts of reckless homicide (Ill. Rev. Stat. 1981, ch. 38, par. 9—3), driving under the influence (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501), and driving on the wrong side of the roadway (Ill. Rev. Stat. 1981, ch. 95½, par. 11—701(c)). Defendant was sentenced to concurrent two-year terms of imprisonment on the two reckless homicide counts and was fined $1,000 for driving under the influence of alcohol and drugs and $100 for driving on the wrong side of the roadway. He appeals from his convictions on the reckless homicide and driving under the influence counts contending that: (1) the motion to

---

*Justice Mejda authored the original opinion issued in this cause and, upon his retirement, Justice Murray was substituted. Justice Murray has listened to the tape of arguments and has considered the record, briefs and the opinion in this matter.

suppress the results of defendant's urine sample should have been granted because defendant never consented to the seizure or analysis of the sample; (2) the trial court applied the wrong legal standard in denying his motion to suppress his statements made to police in the hospital; (3) the defendant never waived his right to a jury trial on the charges of driving under the influence and driving on the wrong side of the roadway; (4) the State failed to prove beyond a reasonable doubt that defendant was under the influence of alcohol or cannabis or that he exceeded the speed limit; and (5) the trial court abused its discretion in sentencing the defendant to concurrent two-year terms of imprisonment. We affirm in part, reverse in part, vacate defendant's sentence and remand the cause for resentencing.

The incident giving rise to this case was an automobile accident on River Road in Des Plaines on July 15, 1982, which resulted in the deaths of Gregory Satinover and Julie Kalber. The evidence at trial established that the defendant's vehicle was proceeding northbound on River Road at about 10 p.m. In the vicinity of the accident, River Road is a four-lane roadway, two lanes in each direction, with a double yellow line separating northbound and southbound lanes and a posted speed limit of 50 miles per hour. Except for intersections, there are no lights along River Road, which is bounded on either side by wooded areas. At the point where the accident occurred, there is a curve in the road.

Defendant, who was familiar with this portion of the road, testified that he was driving in the innermost of the two northbound lanes. He was neither drowsy nor having mechanical trouble with his vehicle. Defendant estimated that his speed was about 50 miles per hour. He had not had anything alcoholic to drink nor had he taken any kind of drugs the evening of the accident. He had, however, smoked marijuana the day before the accident. The last thing he recalled prior to the accident was the headlights of another car followed almost instantly by a crash.

The defendant's brother, John McDermott, a passenger in defendant's vehicle, testified that the defendant did not drink any alcoholic beverages or take any drugs the evening of the accident. He did not notice anything unusual about defendant's driving that evening nor did he see the vehicle cross the center line. Although he glanced at the speedometer prior to the accident, he did not see what speed it registered.

On the evening in question, Daniel Nelson was stopped at a stop light at the intersection of Kensington and River Roads when the victims' vehicle turned onto River Road in front of him. The victims' ve-

hicle was about 100 feet ahead of Nelson's vehicle traveling southbound. After the light turned green, Nelson accelerated to 45 to 50 miles per hour and began gaining on the victims' vehicle. He saw the taillights of the victims' vehicle flicker, but did not observe the accident or any other vehicles on the road in either a northbound or southbound direction. As he neared the accident site, he saw the victims' vehicle in a ditch and the defendant's vehicle in the outermost southbound lane.

Des Plaines Police Officer Michael Erbach was the first officer on the scene. He found all four people injured, the vehicles extensively damaged, the defendant's vehicle in the southbound outermost lane facing south and the victims' vehicle off the roadway facing north. He noticed four deep gouges in the pavement just south of defendant's vehicle, each a couple of feet long, caused by a part of a vehicle protruding into the pavement at the time of impact. There were no skid marks at the scene. Erbach identified the occupants of one vehicle as Gregory Satinover and Julie Kalber and of the other as Gerald and John McDermott. He stated that the weather was warm and the road dry and free of defects.

In the emergency room, nurse Laura Marzano attended to the defendant. She took blood and urine samples from the defendant, who was unconscious, and gave the urine sample to Des Plaines Police Detective Michael Lambeau. She thought she detected a faint smell of alcohol on defendant's breath.

Detective Lambeau testified that on July 23, he questioned the defendant shortly after he had been removed from intensive care. At that time, defendant told Lambeau that he thought the other vehicle was in his lane, that he had had one beer about 3:30 p.m. on the day of the accident and that he had smoked some marijuana the day before the accident. When an accident reconstruction expert, Lynn Fricke, inspected the vehicles on August 17, the vehicles were in substantially the same condition as they were the morning after the accident. The roadway at the scene of the accident was in substantially the same condition on August 17 as it was on July 16 when Detective Lambeau first arrived on the scene.

Ramamal Patel, a toxicologist, analyzed the defendant's urine sample to determine the presence of alcohol or controlled substances. The results indicated a .025 alcohol concentration in the defendant's blood and the presence of 75 nenograms per millileter of cannabinoids in defendant's urine. Patel attached no significance to the latter result except that it showed the presence of a high level of cannabinoids in the urine. On cross-examination, Patel stated that if a person had two

beers at the time the defendant had one, 10 hours later there would be no trace of alcohol in his body. When called on behalf of the defense, Patel testified that he could not say what effect the level of alcohol and cannabis would have on a person's ability to perform normal tasks.

An accident reconstruction expert, Lynn Fricke, testified that he was provided with police reports, measurements and photographs taken by police at the accident scene. On August 17, Fricke visited the scene taking his own measurements and photographs. He later viewed and photographed the two vehicles. In his opinion, the accident was a head-on collision which occurred in the outermost southbound lane or the lane in which the victims' vehicle was traveling. Based on information given him by police that the victims' vehicle was traveling 45 miles per hour, Fricke estimated the speed of defendant's vehicle to be about 71 miles per hour. He acknowledged that if he had not been given the speed of the victims' vehicle, he could not have estimated the speed of the defendant's vehicle.

Prior to trial, defendant moved to suppress the statements made to Detective Lambeau at the hospital. He also moved to suppress the seizure and analysis of defendant's urine sample. Hearings were held on both of these motions. The court found the statements made to Lambeau were voluntarily made by the defendant. The trial court denied the motion to suppress the seizure and analysis of the urine based on the implied consent statute. Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1.

At the conclusion of the trial, the defendant was found guilty of two counts of reckless homicide, one count of driving under the influence and one count of driving on the wrong side of the roadway. He was sentenced to concurrent two-year terms of imprisonment and was fined $1,000 for driving under the influence and $100 for driving on the wrong side of the roadway. Defendant now appeals his reckless homicide and driving under the influence convictions.

Opinion

Defendant's first contention is that the trial court erred in denying his motion to suppress the taking and testing of his urine sample. Defendant argues that section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1), which the trial court relied on as creating implied consent to the testing, is inapplicable in the present case because defendant was not arrested when the urine was seized and analyzed. The State counters that the defendant never argued at trial or in his post-trial motion for a new trial that he had

not been arrested and, therefore, the issue is waived.

■■ The failure to raise an issue in a written motion for a new trial constitutes a waiver of that issue, and it cannot be urged as grounds for reversal on review. (*People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840; *People v. Camp* (1984), 128 Ill. App. 3d 223, 470 N.E.2d 540.) The defendant's post-trial motion for a new trial merely states that the trial court erred in denying the defendant's motion to suppress the seizure and analysis of his urine. The motion does not set forth the specific reasons for the alleged error. The failure to state the specific ground of complaint here defeats the purpose of the post-trial motion, which is to afford the trial court an opportunity to grant a new trial if warranted. *People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223.

■■ Under Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)), this court may elect to consider errors that have not been properly preserved for review. Invocation of Rule 615(a) is unnecessary here, however, because even if improperly admitted, the results of the chemical analysis of defendant's urine do not unfairly prejudice the defendant. Patel's testimony proved that the defendant was not under the influence of alcohol and proved nothing conclusive concerning the effect of the cannabis in the defendant's system. We do not think that defendant was prejudiced by the admission of the results of the chemical analysis of his urine.

Defendant's second contention is that the trial court applied the wrong legal standard when it denied his motion to suppress his statements to Detective Lambeau, namely, that he consumed one beer at 3:30 p.m. on the day of the accident and that he smoked marijuana the day before the accident. Defendant argues that the trial court employed the old standard for determining the voluntariness of a statement that as long as the accused is capable of making a narrative of past events and stating his own participation in the crime, the fact that a statement is drug induced affects only the weight of the statement. *People v. Townsend* (1957), 11 Ill. 2d 30, 141 N.E.2d 729, *rev'd on other grounds* (1963), 372 U.S. 293, 9 L. Ed. 2d 770, 83 S. Ct. 745.

■■■ The State bears the burden of showing that the defendant's statements were made voluntarily. (*People v. Kincaid* (1981), 87 Ill. 2d 107, 429 N.E.2d 508, *cert. denied* (1982), 455 U.S. 1024, 72 L. Ed. 2d 144, 102 S. Ct. 1726.) This question is one of fact to be determined by the trial court (*People v. Dalton* (1982), 91 Ill. 2d 22, 434 N.E.2d 1127) and after consideration of the totality of the circumstances (see *People v. Hebein* (1982), 111 Ill. App. 3d 830, 444 N.E.2d 782), it need be convinced only by a preponderance of the evidence that the statement in

question was voluntary; that is, that the accused's will was not overborne such that the statement cannot be deemed a product of rational intellect and free will. (*People v. Kincaid* (1981), 87 Ill. 2d 107, 429 N.E.2d 508.) Therefore, where the question has been ruled upon by the trial court and the proper legal standard has been employed, the sole question for review is whether its determination is contrary to the manifest weight of the evidence. *People v. Brownell* (1980), 79 Ill. 2d 508, 404 N.E.2d 181, *cert. dismissed* (1980), 449 U.S. 811, 66 L. Ed. 2d 14, 101 S. Ct. 59.

■ Because defendant does not challenge the court's ruling as against the manifest weight of the evidence, we address only the issue of whether the court applied the proper legal standard. From our reading of the trial court's ruling on the motion to suppress, we find that the court correctly applied the totality of the circumstances standard. The court concluded its ruling on this motion by stating that "the totality of the evidence and the circumstances as argued by the prosecution shows that Mr. McDermott was afforded all of his rights under Miranda ***." The court specifically considered that the defendant seemed to be alert and responsive, that he exhibited no outward sign to Detective Lambeau that he was feeling the effects of any drugs, that he was in the company of his father and wife when questioned, that defendant had severe physical injuries, that he was advised of his *Miranda* rights, that the interview was only five to seven minutes long and that there was no evidence of coercion. After considering these facts, the trial judge stated that he was persuaded by the testimony of Detective Lambeau and not by the defense's witnesses, the defendant and his father. In our opinion, the court properly determined the issue through its application of the correct legal standard.

■■ ■ Defendant's third contention is that he never waived his right to a jury trial on the driving under the influence or driving on the wrong side of the roadway counts but rather waived it only on the two reckless homicide counts. It is the duty of the trial court to see that a waiver of the right to jury trial is expressly and understandingly made, and such obligation is not to be perfunctorily discharged. (*People v. Sebag* (1982), 110 Ill. App. 3d 821, 443 N.E.2d 25; see Ill. Rev. Stat. 1983, ch. 38, par. 103—6.) Whether or not a waiver of the right to trial by jury is knowingly and understandingly waived must be decided on the particular facts of each case and cannot be determined by any precise formula. *People v. Mitchell* (1974), 21 Ill. App. 3d 171, 315 N.E.2d 101.

■ During the trial of this case the State introduced evidence on all four counts, not just the two reckless homicide counts. Defense

counsel did not object to the introduction of this evidence. The State argued in its closing argument that the defendant was guilty of all four charges. Defense counsel neither objected to the argument nor demanded a jury trial on the misdemeanor charges. When the trial court found the defendant guilty on all four counts, no objection was made that he was not on trial for all four counts. Under these circumstances, we find that the defendant waived his right to a jury trial on the driving under the influence and driving on the wrong side of the roadway counts.

Defendant's fourth contention is that he was not proved guilty beyond a reasonable doubt of the two counts of reckless homicide and driving under the influence.

■■ ■ A person commits reckless homicide if, while driving a motor vehicle, he unintentionally kills an individual and the acts which caused the death are performed recklessly so as to create a likelihood of death or great bodily harm to some person. (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a).) A person acts recklessly in this regard when he consciously disregards a substantial and unjustifiable risk that his acts are such as are likely to cause death or great bodily harm to some individual and where such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in such a situation. (*People v. Bonzi* (1978), 65 Ill. App. 3d 927, 382 N.E.2d 1300.) The mental state of recklessness is to be inferred from all of the facts and circumstances in the record and whether the given conduct is reckless is a fact question for the trier of fact to decide. *People v. Hawn* (1981), 99 Ill. App. 3d 334, 425 N.E.2d 1024.

The defendant contends that the State failed to prove beyond a reasonable doubt that the defendant was under the influence of alcohol or cannabis and that he exceeded the speed limit. Consequently, the evidence of his failure to stay in the proper lane is insufficient to convict him of reckless homicide.

■■ We agree with defendant's contention that the evidence was insufficient to prove that he was under the influence of alcohol or drugs. The concentration of alcohol in his blood was .025. If there is an alcohol concentration in the blood of .05 or less, an individual is presumed not to be under the influence of alcohol. Although Patel testified that there was a high level of cannabis in defendant's urine, he could not say how it affected defendant's ability to perform normal tasks. The State must show that the defendant was under the influence so that he was less able, either mentally or physically, to operate an automobile with safety to himself and to the public. (*People v. Winfield* (1973), 15 Ill. App. 3d 688, 304 N.E.2d 693.) Here, there

was no such testimony from Patel or any other witness, and the State has not shouldered its burden.

■■ Defendant urges a reversal of his convictions based on *People v. Gosse* (1983), 119 Ill. App. 3d 733, 457 N.E.2d 129. In *Gosse,* the defendant moved *in limine* to bar the State from introducing evidence that the defendant had consumed one beer and smoked cannabis just prior to an automobile accident in which one person was killed. The trial court denied the motion. This court subsequently reversed the defendant's conviction for reckless homicide, stating that "[w]e deem evidence of a nominal consumption of alcohol and cannabis without more or any showing that the defendant's mental and physical abilities were impaired is so inflammatory as to constitute reversible error." (119 Ill. App. 3d 733, 737, 457 N.E.2d 129.) Patel's testimony was not that defendant's cannabis consumption was nominal but rather that it was a high level. He stated further that if defendant had had one beer at 3:30 p.m. on the day of the accident, there would have been no trace of alcohol in his system when the urine sample was taken. For these reasons, we think the factual circumstances of this case differ from *Gosse* and it is, therefore, inapplicable.

Defendant next challenges the admissibility of the testimony of Lynn Fricke, an expert on accident reconstruction, who concluded that defendant's vehicle was traveling about 71 miles per hour and that the head-on collision occurred in the victims' lane of traffic. Defendant argues that Fricke's testimony is inadmissible because expert testimony is not required to establish defendant's speed where there is eyewitness testimony on the issue and because Fricke viewed the scene over a month after the accident.

■■ ■ In cases where eyewitness testimony is available, the use of an expert is left to the discretion of the court within the guiding principle that the use of such testimony should be the exception and not the rule. (*People v. Dietschweiler* (1974), 21 Ill. App. 3d 707, 315 N.E.2d 585.) The speed of an automobile is generally considered a matter not beyond the ken of the average juror. (21 Ill. App. 3d 707, 315 N.E.2d 585.) If, however, eyewitness testimony is unreliable, expert testimony is permissible. (*People v. Wolfe* (1983), 114 Ill. App. 3d 841, 449 N.E.2d 980.) In this case, no eyewitness could establish either the defendant's speed at impact or the lane in which the accident occurred. Nelson did not see the defendant's vehicle or the accident. John McDermott never saw the speed registered on the speedometer. We conclude that Fricke's testimony was appropriate due to a lack of reliable eyewitness testimony on both the defendant's speed and the

point of impact.

■■ Defendant's argument that Fricke's testimony lacked a proper foundation because he did not view the accident site or the vehicles until over one month after the occurrence is meritless. Detective Lambeau testified that the vehicles and the accident scene were in substantially the same condition when Fricke saw them on August 17 as on the morning after the accident, thereby laying a proper foundation for Fricke's testimony. (See *People v. Dietschweiler* (1974), 21 Ill. App. 3d 707, 315 N.E.2d 585.) We find that the trial court did not abuse its discretion in allowing Fricke to testify. *People v. White* (1973), 10 Ill. App. 3d 914, 295 N.E.2d 300, *aff'd* (1975), 61 Ill. 2d 288, 335 N.E.2d 457, *cert. denied* (1976), 424 U.S. 970, 47 L. Ed. 2d 738, 96 S. Ct. 1469.

■ We agree with the defendant that excessive speed, by itself, is not always sufficient to sustain a conviction for reckless homicide. (See *People v. Ziegler* (1979), 78 Ill. App. 3d 490, 396 N.E.2d 1160.) While speed alone may be insufficient to sustain a conviction, speed combined with other circumstances which indicate a conscious disregard of a substantial risk likely to cause death or great bodily harm to others is sufficient. (*People v. Boyle* (1979), 78 Ill. App. 3d 791, 396 N.E.2d 1347.) The evidence at trial established that the defendant was traveling about 71 miles per hour in a 50 mile per hour zone and that the defendant crossed over into the lane traveled by the victims' vehicle striking their vehicle head on. We believe that defendant's conduct demonstrates an utter disregard for the safety of the victims and is a gross deviation from the care a reasonable person would exercise in such circumstances. We find that the defendant was proven guilty beyond a reasonable doubt of reckless homicide. Due to the State's failure to prove that defendant was under the influence of alcohol or drugs, we reverse the defendant's conviction for driving under the influence.

The last contention defendant advances is the propriety of the trial court's sentencing the defendant to concurrent two-year terms of imprisonment for reckless homicide.

■■ Our supreme court has established that sentencing is a matter of discretion and that, absent an abuse of discretion, a sentence may not be altered on review. (*People v. Willingham* (1982), 89 Ill. 2d 352, 432 N.E.2d 861; *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) It is not our function to serve as a sentencing court; thus a sentence imposed within the statutory limits will not be reduced merely because we, as a reviewing court, might have imposed a different punishment. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d

882.

Reckless homicide is a Class 4 felony. (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(b)(2).) The permissible sentence ranges from a one- to a three-year term of imprisonment. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(7).) It is clear that the trial court did not transcend the prescribed statutory framework by sentencing the defendant to concurrent two-year terms of imprisonment.

■■ Notwithstanding the foregoing, however, we find merit in defendant's argument that the case should be remanded for resentencing because the trial court may have been influenced in its imposition of sentence on the reckless homicide convictions based upon its finding that defendant was driving under the influence of alcohol and cannabis.

The standard to be applied in a case such as this has not been clearly defined by Illinois courts. It has been held that a remand for resentencing is appropriate where the reviewing court is unable to determine affirmatively from the record whether the sentence was influenced by the trial court's consideration of improper factors. (*People v. Conover* (1981), 84 Ill. 2d 400, 405, 419 N.E.2d 906.) Our courts have also held that a remand for resentencing is only appropriate when the defendant comes forward with convincing evidence that the judge or jury was so influenced. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477.) Recently, our supreme court found it unnecessary to address a preference of one standard over the other, since the record in that case satisfied the latter, higher standard; the record revealed that the trial judge *had been influenced* by a reversed contemporaneous conviction in imposing its original sentence. *People v. Alejos* (1983), 97 Ill. 2d 502, 513-14, 455 N.E.2d 48.

Here, we also find it unnecessary to make such a determination. The record in this case indicates that the trial court *may have been* influenced by the driving while under the influence charge in imposing sentence on defendant's reckless homicide convictions. The driving under the influence and reckless homicide charges were intimately connected; driving while under the influence was listed in the State's bill of particulars as a "basis" for recklessness. In addition, the State stressed at sentencing the allegation that defendant was driving under the influence of alcohol and cannabis, making him "culpable for the death of two people." Accordingly, since we cannot be certain whether the trial court was influenced by the contemporaneous driving under the influence conviction in imposing sentence on the reckless homicide convictions, the sentence on the reckless homicide convictions must be vacated and the cause remanded for resentencing,

with directions that the trial court not consider the driving under the influence conviction.

For the above reasons, defendant's convictions for reckless homicide are affirmed; defendant's conviction for driving under the influence is reversed; and the sentence on the reckless homicide convictions is vacated and the cause remanded for resentencing, with directions.

Affirmed in part; reversed in part; sentence vacated and cause remanded for resentencing, with directions.

SULLIVAN, P.J., and LORENZ, J., concur.